

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,017

### BARTHOLOMEW GRANGER, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 13-16388
### IN THE 58TH JUDICIAL DISTRICT COURT
### JEFFERSON COUNTY

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and JOHNSON, KEASLER, HERVEY, ALCALA, RICHARDSON, and NEWELL, JJ., joined. Yeary, J., concurred.

### O P I N I O N

In April 2013, a jury convicted appellant of capital murder for the March 2012 death of Minnie Ray Sebolt. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death. TEX. CODE

CRIM. PROC. Art. 37.071, § 2(g).[1]  Direct appeal to this Court is automatic.  Art.

37.071, § 2(h).  Appellant raises seven points of error.  After reviewing appellant's points

of error, we find them to be without merit.  Consequently, we affirm the trial court's

judgment and sentence of death.

The State indicted appellant for capital murder under the theory that appellant

caused Sebolt's death on March 14, 2012, while he was retaliating against (and intending

to kill) Claudia Jackson for her service as a witness.  *See* TEX. PENAL CODE ANN.

§ 19.03(a)(2).  The jury heard evidence that, on the day of Sebolt's death, appellant was

on trial in Jefferson County for sexually assaulting his daughter, Samantha Jackson.[2]  On

Tuesday, March 13, 2012, Samantha and her mother, Claudia, had testified adversely to

appellant.  The sexual-assault trial and Samantha's testimony were scheduled to resume at

1:00 p.m. on Wednesday, March 14, 2012.  Rebecca Richard, appellant's estranged wife,

was under subpoena to testify.

Attorney Rife Kimler represented appellant at the sexual-assault trial.  On Tuesday

evening, appellant, who was free on bond, called Kimler's office and spoke to Kimler's

secretary, Chelle Warwick.  Warwick testified that appellant was angry, upset, and crying

hysterically at the beginning of the conversation.  He accused the trial judge in the sexual-

---

[1]  Unless otherwise indicated, all future references to Articles refer to the Code of Criminal Procedure.

[2]  To distinguish Samantha Jackson and Claudia Jackson, we will refer to them by their first names.

assault case of allowing witnesses to commit perjury and of preventing Kimler from presenting evidence. Appellant repeatedly referred to the judge as "that bitch" and expressed the desire for a different judge and a change of venue. Appellant ended the conversation by calmly telling Warwick that "he would take care of it tomorrow."

Appellant arrived at the courthouse between 8:00 and 9:00 a.m. on Wednesday morning and parked his truck in a nearby lot. A little before 11:00 a.m., a witness saw appellant periodically opening the door of his truck and peering over the door to look toward the street in front of the courthouse.

At approximately 11:00 a.m., Samantha, Claudia, and Richard met in a parking lot across the street from the courthouse. They crossed the street and began walking on the sidewalk toward the courthouse. Appellant approached and began firing at the trio with a semi-automatic rifle.

Richard, who fled back across the parking lot, was not hit. Samantha froze when the shooting began. Although appellant shot Samantha multiple times and then ran over her with his truck before fleeing the scene, she survived. Claudia was shot in the buttocks as she ran toward the courthouse, seeking cover. As she approached the courthouse, Claudia saw Sebolt, a bystander, lying on the ground in front of the courthouse doors. Sebolt suffered multiple gunshot wounds and died at the scene. Leslie King, another bystander, was in front of the courthouse when appellant started firing. King ran when she saw appellant turn his weapon in her direction and was wounded in the little finger as

she heard bullets going past her.

As appellant was returning to his truck, law-enforcement officers shot and wounded him.  Appellant fled in his truck for a short distance from the courthouse, then abandoned the vehicle and took hostages at a nearby business.  Appellant told a hostage negotiator that he had been accused of raping his daughter and that he "wanted to kill all of them."  Using a hostage's cellular phone, appellant told his brother that he had run over his daughter and shot her and that he had tried to kill his ex-wife and ex-girlfriend.  An officer inside the business where appellant had taken hostages heard him say, "I shot the bitch.  She had it coming.  I shot two other women."  Law-enforcement officers took appellant into custody after the hostages overpowered him.

Appellant received medical treatment for his wounds at a local hospital, where he made further incriminating statements.  In pertinent part, appellant stated that he had been shot after he tried to kill Claudia, Richard, and the trial judge, and that he had intended to murder them.

Appellant testified at both phases of his capital-murder trial.  During his guilt-phase testimony, appellant admitted to shooting Samantha and intentionally running over her with his truck.  Appellant denied causing Sebolt's death and also denied causing Claudia's and King's wounds.  Appellant asserted that he did not shoot in the direction of the courthouse because he used all his bullets on Samantha.

In point of error one, appellant argues that the indictment failed to allege the

offense of capital murder. Specifically, appellant contends that the indictment omitted the requisite culpable mental state for capital murder because it did not allege that he intentionally and knowingly caused Sebolt's death. Because appellant did not object to the indictment on this basis before trial, he may not now complain of it. *See Kirkpatrick v. State*, 279 S.W.3d 324, 327 (Tex. Crim. App. 2009). Point of error one is overruled.

In point of error two, appellant alleges that his conviction and death sentence are invalid because they are based upon transferred intent. Relying on *Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008), *abrogated in part by Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012), appellant asserts that transferred intent does not apply to the offense of capital murder.

Appellant's reliance on *Roberts* is misplaced. Our opinion in *Roberts* concerned a defendant who had been charged with capital murder under a multiple-murder theory of liability. *See* 273 S.W.3d at 329; *see also* TEX. PENAL CODE ANN. § 19.03(a)(7)(A). Specifically, the indictment alleged that Roberts had intentionally and knowingly caused the death of Virginia Ramirez by shooting her with a firearm, and during the same criminal transaction, had intentionally and knowingly caused the death of Ramirez's unborn child. *See Roberts*, 273 S.W.3d at 325. No evidence was presented at trial that Roberts knew of Ramirez's pregnancy. *See id.* at 327. In that context, we held that the State could not use transferred intent to establish that Roberts knowingly and intentionally caused the death of the unborn child. *See id.* at 329. We explained that, because the

indictment alleged that Roberts knowingly and intentionally caused more than one death during the same criminal transaction, the State had to prove beyond a reasonable doubt that Roberts possessed the requisite culpable mental state as to each complainant. *See id.* at 328–29.

Here, the State charged appellant with capital murder under an entirely different theory, alleging one intent to kill, one resulting death (that of an unintended victim, Sebolt), and the existence of an aggravating circumstance. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). In *Roberts*, we limited the State's use of transferred intent in prosecutions for capital murder under a multiple-murder theory, but stated that transferred intent may still apply to some capital murder offenses. *See Roberts*, 273 S.W.3d at 331 (stating that the State could have used transferred intent to charge capital murder if Roberts, with the intent to kill, had fired a bullet at Ramirez's two-year-old child who was present during the offense, but the bullet instead killed the embryo); *see also* TEX. PENAL CODE ANN. § 19.03(a)(8) (elevating the murder of an individual under ten years of age to a capital offense). And following our decision in *Roberts*, we clarified that, in some circumstances, the State may use transferred intent in capital-murder prosecutions alleging multiple or serial murders. *See Norris*, 390 S.W.3d at 341 & 341 n.28; *see also* TEX. PENAL CODE ANN. § 19.03(a)(7)(B). Point of error two is overruled.

In point of error three, appellant alleges that the evidence was insufficient to support his capital-murder conviction because there was no evidence that he intended to

cause Sebolt's death. But the State prosecuted appellant for capital murder under Texas Penal Code section 19.03(a)(2) and a theory of transferred intent. The State was therefore not required to prove that appellant intended to cause Sebolt's death. *See Roberts*, 273 S.W.3d at 331*; cf. Norris*, 390 S.W.3d at 341. Rather, the State had to prove beyond a reasonable doubt that appellant possessed the requisite culpable mental state as to Claudia. Appellant does not contend that the State failed to prove that he possessed the requisite *mens rea* regarding Claudia. Further, the record does not support such a conclusion. Point of error three is overruled.

In point of error four, appellant alleges that reversible error occurred during his guilt-phase testimony because, during cross-examination, the lead prosecutor called him a "murdering son of a bitch." The record shows that, during his cross-examination by the State, appellant asked the prosecutor, "Why is it that people automatically assume that I'm lying? Why—why isn't my word good enough?" When appellant insisted that the prosecutor answer the question, the prosecutor responded, "Because you're a murdering son of a bitch. That's why." Appellant contends that the prosecutor's remark was so fundamentally improper that no instruction to disregard the comment could remove the taint. However, the record shows that appellant did not object to the prosecutor's response. Accordingly, appellant has not preserved the claim for review. *See* TEX. R. APP. P. 33.1(a). Point of error four is overruled.

In point of error five, appellant argues that the lead prosecutor engaged in six

instances of improper jury argument during the guilt phase. Appellant acknowledges that each separate instance of allegedly improper argument may not have constituted reversible error, but he asserts that their cumulative effect denied him a fair trial.

Proper areas of jury argument include: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to opposing counsel's argument; or (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). A defendant forfeits his right to complain on appeal about an improper jury argument if he fails to object to the argument or to pursue his objection to an adverse ruling. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004). If a trial court sustains an objection asserting an improper jury argument, to preserve error on appeal, the complaining party must additionally request an instruction to disregard an offending argument if such an instruction could cure the prejudice. *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). If the prejudice arising from an erroneous jury argument is incurable, the complaining party must move for a mistrial. *Id*.

Appellant first alleges that the prosecutor said that appellant was trying to stare him down and called appellant an "evil creature." On appeal, appellant asserts that the argument was improper because it was not based on evidence before the jury.

At trial, the prosecutor argued that the jury had the right to judge appellant's demeanor because appellant had testified. The prosecutor asserted that appellant had "stare[d] . . . down" a witness at the trial while the witness was testifying. The prosecutor

further asserted that appellant was attempting to stare down the prosecutor. Appellant did not object to these comments.

The prosecutor continued, "You see? You get to judge his demeanor and the kind of evil creature that this guy is." Defense counsel objected: "That's striking at the [appellant]." The trial court responded by instructing the prosecutor to rephrase. The prosecutor proposed, "Evil person? Is [appellant] a person?" The trial court thereafter sustained defense counsel's objection. Defense counsel did not request an instruction to disregard the "evil creature" remark or move for a mistrial.

Appellant did not preserve either aspect of the first complained-of jury argument for appellate review. Although he now challenges the prosecutor's assertions about staring, appellant did not object to the remarks at trial. *See* TEX. R. APP. P. 33.1; *Threadgill*, 146 S.W.3d at 670. And while appellant objected to the "evil creature" description, he did not request an instruction to disregard or move for a mistrial after the trial court sustained his objection. *See McGinn*, 961 S.W.2d at 165. In addition, appellant's argument on appeal does not comport with his objection at trial. *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

In the second allegation of improper jury argument, appellant complains that the prosecutor said that the jury charge was based on minutiae regarding transferred intent and that appellant would "walk out of the courtroom" if the jury became lost in the details. The record shows that defense counsel objected that the prosecutor had made an

incorrect statement of the law. The record further shows that the trial court sustained the objection. However, defense counsel did not request an instruction to disregard or move for a mistrial. Therefore, appellant did not preserve the second complained-of jury argument for appellate review. *See McGinn*, 961 S.W.2d at 165.

In the third alleged instance of improper jury argument, the prosecutor asked, "[I]f [appellant's] found not guilty, what happens to him? I guess we don't get to know." Appellant did not object to the prosecutor's remark. Accordingly, appellant did not preserve the third complained-of jury argument for our review. *See* TEX. R. APP. P. 33.1; *Threadgill*, 146 S.W.3d at 670.

Regarding the fourth alleged instance of improper jury argument, appellant directs us to the following portion of the prosecutor's closing argument:

> So, what do they bring you as their defenses? What does [appellant] bring as his defense to this courtroom? That the cops shot [Sebolt]? You really think that plays? Do you really think that plays?

> There is not one, not one iota, not one microbit of proof that anybody shot their weapon until—other than that man right there (indicating), until after he was back in his truck. And by that time the evidence proves without any doubt, without any doubt that Minnie Sebolt was already lying, dying in a pool of her own blood.

> And for him to perpetrate that fraud on you is—that's enough reason right now to be so angry that you—

Defense counsel immediately objected that the prosecutor was striking at appellant over the shoulders of his attorneys and the evidence that they presented. The trial judge responded: "[The prosecutor] has the right to comment on the evidence." The prosecutor

then continued with his argument. On appeal, appellant argues that the prosecutor's use of the words, "for him to perpetrate that fraud on you," was improper because it was not based on evidence before the jury.

Appellant failed to preserve error regarding the fourth complained-of jury argument. Initially, it appears that appellant failed to pursue his objection to an adverse ruling. *See Threadgill*, 146 S.W.3d at 670. We have stated that to satisfy the adverse-ruling requirement in a claim alleging improper jury argument, "the ruling must be conclusory; that is, it must be clear from the record [that] the trial judge in fact overruled the defendant's objection." *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (determining that the trial court's response to the defendant's objection was neither a definite nor adverse ruling); *see Flores v. State*, 871 S.W.2d 714, 722-23 (Tex. Crim. App. 1993) (concluding that because the trial court did not give a clear instruction to disregard and did not rule on the defendant's motion for mistrial, he did not satisfy the adverse-ruling requirement). However, we have also stated that a court's ruling on a complaint or objection can be impliedly made. *See Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995) ("While we require that a defendant's objections be specific enough to effectively communicate his complaint to the court, we are less stringent in our requirements of the trial court's ruling on an objection."); *see also Sauceda v. State*, 129 S.W.3d 116, 124 (Tex. Crim. App. 2004) (citing *Rey* with approval). But even if we assume that the trial judge's response to appellant's objection constituted an adverse

ruling, appellant's argument on appeal does not comport with his objection at trial. *See* TEX. R. APP. P. 33.1; *Bekendem*, 441 S.W.3d at 300.

Appellant argues that the fifth alleged instance of improper argument occurred immediately after he lodged his objection to the fourth alleged instance of improper argument. Appellant asserts that the prosecutor alluded to the objection by stating, "You see, when a lawyer starts to argue and it starts to hurt, they try to throw you off." Appellant objected that the prosecutor was again striking at him over the shoulders of defense counsel. The trial court sustained the objection, stated that defense counsel had the right to object and should do so when they thought it proper, and directed the prosecutor to refrain from commenting on defense counsel's objections. On appeal, appellant asserts that the prosecutor's statement was not based on evidence before the jury.

Appellant did not preserve the fifth complained-of jury argument for appellate review. Although the trial court sustained the objection, appellant did not request an instruction to disregard the prosecutor's statement or move for a mistrial. *See McGinn*, 961 S.W.2d at 165. In addition, appellant's argument on appeal does not comport with his objection at trial. *See* TEX. R. APP. P. 33.1; *Bekendem*, 441 S.W.3d at 300.

In the sixth alleged instance of improper argument, appellant complains that the prosecutor told the jury that appellant was staring at him and called appellant "disgusting." On appeal, appellant contends that the prosecutor's remarks were improper

because they referred to matters outside the evidence. For the reasons discussed below, we conclude that appellant failed to preserve either the "staring" remark or the "disgusting" remark for appellate review.

The complained-of remarks came as the prosecutor addressed appellant's testimony to the effect that Samantha lied about the sexual assault and thus was to blame for the violence that resulted in Sebolt's death. The prosecutor stated that Samantha had not lied, but instead had escaped from appellant's control; that appellant had been caught in the sexual assault because he had lost control of his victim; and that appellant had attempted to regain control by trying to kill Samantha.

The prosecutor continued: "So, when you lose control, how do you gain control? How did [appellant] gain control again, as he stares at me? How do you gain control?" Defense counsel responded: "Your Honor, if—if [appellant's] gonna be chided for—for looking forward, I mean, would the prosecutor like him to look down at the table?" The prosecutor responded, "Absolutely, Judge, that would be fine with me, if he wants to look down. But as long as he stares at me, I have a right to comment on it because he's testified." The trial court apparently construed defense counsel's arguably rhetorical question as an objection because, after the prosecutor responded to the question, the trial court stated, "Overrule the objection."

Despite the trial court's apparent perception that defense counsel had lodged an objection, we do not see a sufficient objection to preserve error for appellate review. It is

not clear from the record whether defense counsel was making an objection or, if so, what the objection was. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (explaining that to preserve error for appellate review, the record must show that the objection stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context). Nor is it clear from the record what the trial judge understood the objection to be. *See id.* at 339–40.

But even if we assume that defense counsel's question constituted an objection, we conclude that appellant failed to preserve error concerning the "staring" remark. Defense counsel did not object the first time the prosecutor argued that appellant was staring at him. *See Davis v. State*, 329 S.W.3d 798, 823 (Tex. Crim. App. 2010) (stating that defense counsel failed to object the first time that the prosecutor made the complained-of jury argument and noting that Texas Rule of Appellate Procedure 33.1 requires a timely objection in order to preserve error). Appellant's failure to object at the first opportunity cured any error in the trial court's ruling. *See id.* (citing *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004), and *Leday v. State*, 983 S.W.2d 713, 718 (Tex Crim. App. 1998)).

Next, the prosecutor stated, "Thank you, your Honor. No, I don't want to look him in the eye. He's disgusting. And he's smiling now." Appellant did not object to the prosecutor's description of him as "disgusting." Therefore, appellant also failed to

preserve his complaint concerning the prosecutor's "disgusting" remark. *See Threadgill*, 146 S.W.3d at 670. Accordingly, we do not reach the merits of appellant's sixth alleged instance of improper jury argument.

Because appellant has not preserved his allegations regarding improper jury argument, he has not shown that any error occurred. Accordingly, there is no error to cumulate. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). Point of error five is overruled.

In point of error six, appellant alleges that the trial court erred at the guilt phase by denying his request for a jury instruction on the lesser-included offense of murder. Appellant contends that there was evidence that he did not fire the bullet that killed Sebolt. Therefore, he argues, the evidence raised the issue of whether he committed murder under either Texas Penal Code section 19.02(b)(2) or (b)(3) instead of capital murder.[3]

We apply a two-step analysis to determine whether the jury should receive a lesser-included-offense instruction. *State v. Meru*, 414 S.W.3d 159, 161–62 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). First, we ask

---

[3] A person commits the offense of murder under section 19.02(b)(2) if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(2). A person commits the offense of murder under section 19.02(b)(3) if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(3).

whether the lesser-included offense's elements are included within the proof necessary to establish the charged offense's elements. *Meru*, 414 S.W.3d at 161. If they are, we then inquire whether the record includes evidence that could allow a rational jury to find the defendant guilty of only the lesser-included offense. *Id.*; *see Feldman v. State*, 71 S.W.3d 738, 751 (Tex. Crim. App. 2002). We stated in *Hall* that "the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." 225 S.W.3d at 536 (internal quotation omitted).

Appellant meets the first prong of the test. We have repeatedly held that murder is a lesser-included offense of capital murder. *See*, *e.g.*, *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009). However, appellant does not meet the test's second prong. "It is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts, and that the act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill." *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005) (internal citation omitted); *see De La Paz v. State*, 279 S.W.3d 336, 349–50 (Tex. Crim. App. 2009) (stating that intent to kill is easily inferred from pointing a gun and shooting). Appellant also repeatedly admitted that he intended to kill Claudia. The evidence does not support a non-retaliatory motive for appellant's conduct on the day of the offense. Thus, if appellant is guilty at all, he can only be guilty of a retaliatory act that elevates the offense to capital murder. Point of error six is overruled.

In point of error seven, appellant argues that the trial court did not comply with Article 42.03, section 1(a), which states in pertinent part that the "sentence shall be pronounced in the defendant's presence." Appellant contends that, after the jury rendered its punishment verdict, the trial court did not actually pronounce the sentence. Instead, appellant asserts, the trial court made a statement indicating that it intended to sentence him at a later time. Appellant further argues that there is nothing in the record to indicate that the trial court subsequently pronounced the sentence in his presence.

The record shows that the jury returned its punishment verdict on May 7, 2013. After polling the jury, the trial court stated that the verdict was unanimous as to both special issues. Appellant spontaneously addressed the trial court, urging "Let's go now. It's over with. Let us fucking move on with our lives now." The trial court responded, "We will. We will. Just—just a moment." After asking a brief question of its court coordinator, the trial court continued:

> The Court: Okay. At this time the verdict has been returned, and at this time the Court will have no option but to sentence you to death at a time to be determined in the future.
>
> [Appellant]: Thank you.
>
> The Court: Those dates will be set some time down the road.
>
> [Appellant]: Thank you.

The trial court then permitted Sebolt's daughter to present a statement to the trial court and appellant about the offense. *See* Art. 42.03, § 1(b). The trial court entered a written

judgment the same day. The judgment accurately reflected the jury's answers to the special issues and indicated that appellant's sentence was death.

Appellant's argument focuses on the trial court's statement, "At this time the verdict has been returned, and at this time the Court will have no option but to sentence you to death at a time to be determined in the future." On appeal, appellant argues that the trial court clearly stated that sentencing would occur in the future.

We note that appellant raises his complaint for the first time on appeal, despite having multiple opportunities to object. Appellant thanked the trial court after it made the statement at issue. The trial court then allowed Sebolt's daughter to address appellant pursuant to Article 42.03, section 1(b). Section 1(b) expressly provides that a victim's statement must be made after the court pronounces sentence. *See id.* at § 1(b)(3); *Johnson v. State*, 286 S.W.3d 346, 347 (Tex. Crim. App. 2009). When the trial court indicated that Sebolt's daughter would address him, appellant did not ask the trial court to clarify its earlier statement, nor did he object that sentencing had not yet occurred. Further, a written judgment is the declaration and embodiment of an orally pronounced sentence. *See Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014). Here, the trial court entered its judgment on the same day that the jury rendered its punishment verdict. If he believed that the trial court had issued its judgment without imposing the sentence in his presence, appellant could have raised the issue in a motion for a new trial. However, appellant did not do so.

Even if we assume that appellant preserved this point of error, we find that it has no merit. The record shows that appellant was present in open court when the jury announced its punishment verdict. After the trial court polled each juror, appellant urged it to "let us fucking move on." It is clear from the trial court's response to appellant that it was proceeding to sentencing. Article 42.03, section 1(a), does not require that the trial court use certain words to pronounce the sentence. From the trial court's repeated use of the phrase "at this time" in the statement at issue, it was sufficiently clear that the trial court was at that moment imposing appellant's sentence. And it can be reasonably inferred that the "later date" referred to the actual setting of an execution date. Point of error seven is overruled.

We affirm the judgment of the trial court.


Delivered: April 22, 2015
En banc
Do Not Publish