## Ex parte Michael Wayne NORRIS, Applicant.

### No. WR–72,835–02.

### Court of Criminal Appeals of Texas.

### Dec. 12, 2012.

Patrick F. McCann, Houston, TX, for Michael Wayne Norris.

Roe Wilson, Asst. District Attorney, Houston, Lisa C. McMinn, State's Attorney, Austin, TX, for State.

KELLER, P.J., delivered the order of the Court.

Applicant was convicted of capital murder and sentenced to death for killing a mother and her baby.[1] We affirmed his conviction and sentence on direct appeal.[2] In his second point of error on direct appeal, applicant complained about the submission of transferred intent instructions in the jury charge and contended

---

1. TEX. PENAL CODE § 19.03(a); TEX.CODE CRIM. PROC. art. 37.071.

2. *Norris v. State,* 902 S.W.2d 428 (Tex.Crim. App.1995).

that the law of transferred intent did not apply to his case.[3] We rejected that contention.[4] In *Roberts v. State*, we overruled our holding in applicant's case.[5] Applicant now contends that he is entitled to relief, based upon *Roberts*. We disagree and deny relief.

### A. *Norris v. State*

The evidence showed that applicant shot and killed a mother and her two-year-old son.[6] The State presented evidence that Applicant first fired a shot that hit the child in the right leg, then fired a shot that hit the child in the forehead, and thereafter shot the child and the mother several more times.[7] The State's evidence further showed that the shot to the forehead was fatal to the child but not fatal to the mother.[8]

We held that the evidence was sufficient to show that applicant intentionally killed the child, but, because the jury charge contained instructions on the law of transferred intent, we proceeded to consider whether transferred intent could apply.[9] Contrary to applicant's contention, we held that the law of transferred intent applies to establish the multiple-murders theory of capital murder when a defendant kills his intended victim and inadvertently kills a bystander.[10] In part, we reasoned that applicant's position would create the ab-

surd result of prohibiting a capital murder prosecution of a defendant who kills his intended victim and inadvertently kills a bystander but allowing a capital murder prosecution when the defendant fails to kill the intended victim but inadvertently kills two or more bystanders.[11]

### B. Concurring Opinions in *Norris*

In a concurring opinion, Judge Clinton addressed whether the State could *twice* use a defendant's intent to kill the victim—once to establish the murder of the victim, and once, via transferred intent, to establish the murder of an unintended victim.[12] He concluded that the plain language of the transferred-intent statute prohibited such double use, and he disagreed with the Court that such a prohibition causes absurd results.[13]

But Judge Clinton concurred in the Court's judgment because the evidence in applicant's case also supported a theory that, intending to kill the mother, applicant first inadvertently caused the death of the child, and then shortly after, in a separate act, intentionally killed the mother.[14] Under such a scenario, Judge Clinton reasoned, "the same intent was not used twice."[15] Instead, applicant's intent to kill the mother with the first shot was transferred to render him culpable for the death

3. *See id.* at 436 & n. 10.

4. *Id.* at 437–38.

5. 273 S.W.3d 322, 329–31 (Tex.Crim.App. 2008).

6. *Norris*, 902 S.W.2d at 431–35.

7. *Id.* at 431–32.

8. *Id.* at 431–32, 436 n. 11.

9. *Id.* at 436. We noted that, because the evidence was sufficient to show that applicant intended to kill the child, applicant's claim that transferred intent did not apply, if cor-

rect, would result only in a new trial and only if applicant had suffered harm. *Id.* at 436 n. 11.

10. *Id.* at 437–38.

11. *Id.* at 438.

12. *Id.* at 450–51 (Clinton, J., concurring).

13. *Id.* at 451.

14. *Id.* at 449.

15. *Id.*

he did cause, the child's.[16] When applicant subsequently fired again, intending to kill, and actually killing, the mother, "he committed a second act by which he became criminally responsible for her murder too."[17]

Judge Baird also filed a concurring opinion in which he stated that we should not address whether capital murder could be established by the killing of an intended victim and an unintended victim in a single act because that scenario was not implicated in applicant's case.[18] Judge Baird explained: "When [applicant] realized he had killed the infant but not the mother, [applicant] continued to shoot and eventually killed the mother. Thus, the murders were not committed in 'a single act.' Consequently, [applicant] was criminally responsible for both murders and the doctrine of transferred intent was not impermissibly expanded."[19]

### C. Roberts v. State

In Roberts, the assailants shot and killed a pregnant woman, whom they did not know was pregnant.[20] Relying upon Norris, the State argued that the defendant's conviction could be upheld on the basis that the intent to kill the mother could be used to establish both the murder of the mother and the murder of the unborn child (via transferred intent).[21]

But we held that the Court's holding in Norris was at odds with its acknowledgment that the multiple-murder theory of capital murder requires "a discrete 'specific intent to kill' as to each death."[22] Although specific intent could be transferred from one person to another, the State cannot use "a single intent to kill to support the requirement of two intentional and knowing deaths."[23] "This is the fallacy of Norris," we said, "it permits the intent to cause one intentional or knowing death to support two deaths, one intentional and knowing, the other unintentional. We overrule Norris to the extent that it allows such use."[24] We further stated, "Transferred intent may be used as to a second death to support a charge of capital murder that alleges the deaths of more than one individual during the same criminal transaction only if there is proof of intent to kill the same number of persons who actually died."[25]

### D. Evaluation

In Roberts, we did not mention the concurring opinions in Norris or address the reasoning of those opinions.[26] We did not need to, because the reasoning in those opinions was not implicated by the facts in Roberts. No evidence suggested that separate acts by the assailants caused the death of the mother and her unborn child; rather, the unborn child, in the very early stages of gestation, died because the mother died.[27] Likewise, the evidence did not depict a situation in which the assailants were aware that an unintended bystander had already been killed when they intentionally killed the mother. Because the mother's pregnancy was not apparent, the

16. Id.

17. Id.

18. Id. at 452 (Baird, J., concurring).

19. Id.

20. 273 S.W.3d at 327.

21. Id. at 329.

22. Id. at 330.

23. Id.

24. Id. at 331.

25. Id.

26. See id., passim.

27. Id. at 331.

assailants were simply unaware of the unborn child's existence.

In overruling *Norris* to the extent that it allowed a single intent to support the requirement of two intentional or knowing deaths, we did not invalidate the concurring opinions' separate rationale for upholding applicant's conviction—that applicant engaged in two discrete instances of conduct that carried separate intents. Our statement in *Roberts* that there must be "proof of intent to kill the same number of persons who actually died" was *dictum,* and we now decide that such *dictum* was improvident. It is certainly possible to intend more than once to kill a particular person. A defendant could shoot at John on Monday with the bullet hitting Mary and killing her instead. Then the defendant could shoot at John again on Tuesday and this time succeed in killing him. Surely no one would suggest that the defendant in such a situation is not guilty of two murders.[28]

Applicant's separate instances of conduct occurred very close in time but were still sufficiently separate to involve separate intents. First, he fatally shot the child in the head, either (1) intending to kill the child or (2) intending to kill the mother but killing the child instead. Even if the latter were the case, his intent transferred to the child. Then, realizing that he had killed the child, he continued to shoot at the mother, thus engaging in conduct with a separate intent to kill.

We deny relief.

MEYERS, J., not participating.

28. And he could be prosecuted under the serial-murder theory of capital murder. *See* TEX.