PD-1050-15

PD-1050-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/11/2015 2:19:21 PM
Accepted 8/17/2015 11:16:39 AM
ABEL ACOSTA
CLERK

No. _____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

ALEXANDRO BRAVO
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review from
Cause No. 01-14-00326-CR, affirming the conviction in
Cause No. 1335513, in the 209th Judicial District Court of Harris County, Texas

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**Oral Argument Requested**

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

NICOLAS HUGHES
Assistant Public Defender
Harris County, Texas
TBN: 24059981
1201 Franklin St., 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax:     (713) 437-4316
nicolas.hughes@pdo.hctx.net

**ATTORNEY FOR APPELLANT**

FILED IN
COURT OF CRIMINAL APPEALS

August 17, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND ATTORNEYS

APPELLANT:                            ALEXANDRO JORDAN BRAVO

TRIAL PROSECUTOR:            ALLISON BUESS
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, 6th Floor
Houston, Texas 77002

ATTORNEYS AT TRIAL:         CHARLES HINTON
Attorney at Law
6407 Castle Lane Drive
Houston, Texas 77066

CASEY GARRETT
Attorney at Law
1214 Heights Boulevard
Houston, Texas 77008

PRESIDING JUDGE AT TRIAL:   HON. MICHAEL MCSPADDEN
209th District Court
Harris County, Texas
1201 Franklin Street, 17th floor
Houston, Texas 77002

ATTORNEY FOR APPELLANT:   NICOLAS HUGHES
Assistant Public Defender
Harris County, Texas
1201 Franklin St., 13th Floor
Houston, Texas 77002

ATTORNEY FOR STATE ON APPEAL:   JESSICA CAIRD
Assistant Public Defender
Harris County, Texas
1201 Franklin St., 6th Floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS ............................................................................ II

TABLE OF CONTENTS ...................................................................................................... III

INDEX OF AUTHORITIES .................................................................................................. IV

STATEMENT REGARDING ORAL ARGUMENT ..................................................................... 1

STATEMENT OF THE CASE ............................................................................................... 1

STATEMENT OF PROCEDURAL HISTORY ............................................................................ 2

GROUNDS FOR REVIEW .................................................................................................... 2

REASONS FOR REVIEW .................................................................................................... 2

ARGUMENT .................................................................................................................... 3

    Summary of the relevant facts ................................................................................ 3

    I. GROUND ONE: The First Court of Appeals erred by concluding that Section 6.04(b)(2) permits an intent to harm only one person during a single criminal act to be transferred to a second injured person when the intended target of the offense was injured by the same criminal conduct ................................................................ 5

        A. *Roberts* and its progeny .......................................................................... 5

        B. The First Court of Appeals erred in holding that *Roberts'* holding only applies to capital murder charges ..................................................................... 6

    II. GROUND TWO: The First Court of Appeals erred by concluding that the parties to the offense "knowingly" injured the A.D. when there was no evidence to suggest the parties knew that A.D. was inside the Durango ....................................... 8

PRAYER ........................................................................................................................ 11

CERTIFICATE OF SERVICE ............................................................................................... 12

CERTIFICATE OF COMPLIANCE ....................................................................................... 12

APPENDIX ..................................................................................................................... 13

# INDEX OF AUTHORITIES

**State Cases**

*Bravo v. State*, --- S.W.3d ---- , No. 01-14-00326-CR (Tex. App.−Houston [1st Dist.] July 30, 2015). ..............................................................................................passim

*Ex parte Norris*, 390 S.W.3d 338 (Tex. Crim. App. 2012) ...........................................5, 10

*Granger v. State*, NO. AP–77,017, 2015 WL 1875907 (Tex. Crim. App. Apr. 22, 2015) (mem. op., not designated for publication).............................................................6, 10

*Hull v. State*, 871 S.W.2d 786 (Tex. App.−Houston [14th Dist.] 1994, pet. ref'd)..........9

*Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008), *abrogated in part by Ex parte Norris*, 390 S.W.3d 338 (Tex.Crim.App.2012) ......................................................3, 5, 6, 7

**State Statutes**

TEX. PENAL CODE ANN. § 6.03 (West 2011).....................................................................10

TEX. PENAL CODE ANN. § 6.04 (West 2011)...............................................................passim

**State Rules**

Tex. R. App. Proc. R. 66.3...............................................................................................3

## STATEMENT REGARDING ORAL ARGUMENT

Appellant's case involves several conflicting versions of the facts that are confusing and difficult to navigate. Oral argument may assist the court in untangling the conflicting versions of events and applying the law to the facts as established by the record and adopted by the jury.

## STATEMENT OF THE CASE

Alexandro Bravo, the Appellant, was convicted after a jury trial of first degree injury to a child. The case involved a collision involving three different vehicles and occurring after a protracted chase involving Appellant, co-defendants Michael Estrada and Cody Evans, witness Melissa Peters, and Steven Rangel and his children. After the Rangel's SUV was run off the road and collided with a light post, Rangel and all of his children, including A.D. (the complaining witness), were seriously hurt. Several of the issues on appeal, now raised on petition for discretionary review, focus on the use of the doctrine of transferred intent set forth in Section 6.04 (b)(2) of the Texas Penal Code[1] to supply the requisite mental state for conviction for first degree injury of the child when the intended victim, Rangel, was injured during the same collision that injured A.D.

---

[1] Section 6.04 of the Texas Penal Code will be referred to as "Section 6.04" throughout the brief.

## STATEMENT OF PROCEDURAL HISTORY

On February 1, 2012, Appellant was charged with injury to a child. (C.R. at 7-8). On April 18, 2012, Appellant was indicted for injury to a child in the 209th District Court of Harris County, Texas. (C.R. at 17). After a jury trial starting on April 2, 2014 and concluding on April 9, 2014, Alex Bravo was convicted of injury to a child and was sentenced to 23 years in prison. (C.R. at 109-111). On July 30, 2015, the First Court of Appeals affirmed Appellant's conviction in a published opinion.

## GROUNDS FOR REVIEW

GROUND ONE: The First Court of Appeals erred by concluding that Section 6.04 (b)(2) permits an intent to harm only one person during a single criminal act to be transferred to a second injured person when the intended target of the offense was injured by the same criminal conduct

GROUND TWO: The First Court of Appeals erred by concluding that the parties to the offense "knowingly" injured the A.D. when there was no evidence to suggest the parties knew that A.D. was inside the Durango

## REASONS FOR REVIEW

This appears to be a case of first impression. Appellant is unaware of any other cases applying Section 6.04(b)(2) to support two convictions for a greater offense where the intended target is injured along with an unintended bystander during a single criminal act. In holding that Section 6.04(b)(2) permits multiple uses of the same intent to harm a single person during a single instance of criminal conduct, the

2

First Court of Appeals has decided an important question of State law that should be settled by the Court of Criminal Appeals. TEX. R. APP. PROC. R. 66.3 (b). Additionally, the First Court of Appeals's decision appears to misconstrue Section 6.04(b)(2), interpreting that statute in a way which conflicts with the limitations this Court placed on the application of Section 6.04(b)(2) in *Roberts* and its progeny. *Roberts v. State*, 273 S.W.3d 322, 330–331 (Tex. Crim. App. 2008), *abrogated in part by Ex parte Norris*, 390 S.W.3d 338 (Tex.Crim.App.2012); TEX. R. APP. PROC. R. 66.3(c,d). Finally, the First Court of Appeals's decision is published and will become binding precedent in the First judicial district.

## ARGUMENT

### Summary of the relevant facts

On January 5, 2012, Steven "Taco" Rangel loaded his three young children, A.D. (the complaining witness), S.R., and C.R., into his Dodge Durango and drove to the Key Truck Stop to get his wheels detailed by a friend, Armando Escalante. *Bravo v. State*, --- S.W.3d ---- , No. 01-14-00326-CR, *2 (Tex. App.−Houston [1st Dist.] July 30, 2015). Cody Evans and Mike Estrada spotted Rangel, and parked a red minivan next to Rangel's Dodge Durango. *Id.* Evans assaulted Armando Escalante and began cursing at Rangel, accusing Rangel of selling drugs in Evans's territory. *Id* at *3. Rangel told Evans that he had children in the car and that he thought Evans should have been able to hear his children. *Id.* To avoid the confrontation, Rangel sped away from the parking lot.

3

Evans pursued Rangel and called Appellant for help. *Id.* Appellant, who was with Melissa Peters, got into Appellant's friend's black truck and joined in the pursuit. *Id.* At some point all three automobiles came to a standstill at the side of the road, where Evans stepped outside of the minivan and confronted Rangel again. *Id.* According to Peters, Rangel slammed into Evans and sped away. *Id.* Peters, Appellant, and Estrada checked on Evans, then Appellant sped after Rangel in the red minivan while Estrada sped after Rangel in the black truck. *Id.*

The pursuit continued, and eventually the black truck driven by Estrada rammed into the Durango while the red minivan driven by Appellant trapped the Durango in its lane. *Id.* at *4. The black truck and the red minivan sped away after the collision. *Id* . The Durango flipped over and wrapped around a light pole, injuring the occupants. *Id.* Rangel suffered a punctured lung, broken collarbone, and six broken ribs in the accident. *Id.* A.D., who was three years old, was very severely injured in the crash and lost her foot from just above the ankle. *Id* .

There was no evidence that proved that Estrada or Appellant knew that A.D. was in the truck or intended to injure A.D. Though Escalante remarked that he could not see Rangel's children, but could hear the children in the back seat, Evans was the only person who got out of the red minivan to confront Rangel at the truck stop. *Id.* at *2. The uncontroverted evidence established that Evans was absent from the scene of the collision, as he had stepped outside of his car and was left behind as Estrada and Appellant chased after Rangel. (4 R.R. at 32-35). The State relied upon the

4

doctrine of transferred intent to authorize Appellant's conviction for first degree injury-to-a-child. (5 R.R. at 15-16, 55); (C.R. at 92).

## I. GROUND ONE: The First Court of Appeals erred by concluding that Section 6.04(b)(2) permits an intent to harm only one person during a single criminal act to be transferred to a second injured person when the intended target of the offense was injured by the same criminal conduct

### A. *Roberts* and its progeny

In *Roberts*, this Court generally limited the application of Section 6.04(b)(2) where several injuries resulted from a single instance of conduct:

> If both persons are killed, we cannot use transferred intent to charge capital murder based on the death of the unintended victim, as that would require using a single intent to kill to support the requirement of two intentional and knowing deaths. Further, while § 6.04 permits the use of transferred intent if a different person is harmed; such use is not authorized if the intended victim is also killed, as that would permit one intent to kill to support more than one death.

*Roberts*, 273 S.W.3d at 330–331. In *Ex parte Norris*, this Court clarified that the State was not required to prove intent to kill the same number of people actually murdered in a trial for capital murder, and that the doctrine of transferred intent may apply where "separate instances of conduct occurred […] but were still sufficiently separate to involve separate intents." *Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012). In *Granger*, this Court reiterated the points made in *Roberts* and *Ex parte Norris*:

> In Roberts, we limited the State's use of transferred intent in prosecutions for capital murder under a multiple-murder theory, but stated that transferred intent may still apply to some capital murder offenses. See *Roberts*, 273 S.W.3d at 331 (stating that the State could have used transferred intent to charge capital murder if Roberts, with the intent to kill, had fired a bullet at Ramirez's two-year-old child who was

5

present during the offense, but the bullet instead killed the embryo); see also TEX. PENAL CODE ANN. § 19.03(a)(8) (elevating the murder of an individual under ten years of age to a capital offense). And following our decision in Roberts, we clarified that, in some circumstances, the State may use transferred intent in capital-murder prosecutions alleging multiple or serial murders.

*Granger v. State*, NO. AP–77,017, 2015 WL 1875907, *2 (Tex. Crim. App. Apr. 22, 2015) (mem. op., not designated for publication). This precedent forbids the use of Section 6.04(b)(2) to support more than one conviction where a single instance of criminal conduct has occurred, a single intent to harm one person is involved, and where an unintended victim is accidentally harmed along with the intended victim.

## B. The First Court of Appeals erred in holding that *Roberts'* holding only applies to capital murder charges

The First Court of Appeals distinguished Appellant's case from that of *Roberts*, concluding that the concerns expressed in *Roberts* do not apply in injury-to-a-child cases:

> The Court of Criminal Appeals has observed that the capital murder statute is distinctive in that it "contains what appears to be a sort of anti-transfer element; thus transferring intent from … lesser offenses to capital murder would be impermissible." *Louis v. State*, 393 S.W.3d 246, 253 (Tex. Crim. App. 2012) (citing *Thompson*, 236 S.W.3d at 799–800). The court has likewise observed that those concerns are not applicable in injury-to-a-child cases:
> "Given the plain language and the history of the provisions at issue, we conclude that [the transferred intent statute] does indeed authorize the transfer of a culpable mental state between offenses contained in the same statute and also between greater and lesser included offenses. That authorization may be overridden by language defining a particular offense, as in the offense of capital murder, but no such impediment arises with respect to the injury-to-a-child offense." *Thompson*, 236 S.W.3d at 800.

*Bravo*, No. 01-14-00326-CR at *15. The First Court of Appeals concluded that the holding in *Roberts* was "unique to the facts of that particular case and the allegations that Roberts committed capital murder by killing two people in the same criminal transaction." *Id.* at *16.

However, the focus in *Roberts* is not on the specifics of the capital murder statute, but the propriety of using the intent to harm a single person to support two convictions, one intentional and knowing, the other unintentional. *Roberts*, 273 S.W.3d at 330–331. While there was evidence showing that the parties intended to injure A.D.'s father, there was no evidence that A.D.'s injury was intentional, calculated, or should have been reasonably anticipated in any way. *Bravo*, No. 01-14-00326-CR at *2-4. There was no evidence that A.D.'s injury stemmed from a criminal act distinct from the collision which injured Rangel. *Id.* at *4. Absent evidence of a separate intent to harm A.D., the intent to injure Rangel cannot supply the culpable mental state to support his conviction for first degree injury-to-a-child when the intended victim, Rangel, was seriously injured by the same collision. The First Court of Appeals erred in concluding that the evidence supported Appellant's conviction for first degree injury-to-a-child.

**II. GROUND TWO: The First Court of Appeals erred by concluding that the parties to the offense "knowingly" injured the A.D. when there was no evidence to suggest the parties knew that A.D. was inside the Durango**

The First Court of Appeals summarized the evidence which led it to conclude that Appellant could have been convicted of knowingly injuring A.D. during a car chase and a collision:

> We conclude that the evidence was sufficient to demonstrate that appellant was aware that his conduct was reasonably likely to result in injury and that it did result in serious bodily injury to A.D., a child under the age of fifteen. Multiple witnesses at trial testified that appellant participated in a vehicle chase over several miles and through two red lights, ramming the Durango multiple times. Rangel testified that appellant, driving the red minivan, blocked him from changing lanes, while Estrada in the black truck rammed the back of his car, causing him to lose control of the Durango and eventually crash into a pole. Deputy Gutierrez testified that a collision with the red minivan caused Rangel's vehicle to skid sideways and into the pole and that the damage caused by the minivan was itself sufficient to cause a serious accident. After Rangel lost control of the Durango and crashed, appellant sped away from the scene without rendering aid. See Baldwin v. State, 264 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("A jury may reasonably infer that the defendant intentionally, not accidentally, inflicted the injury when the defendant fails to render aid known to be needed.").

*Bravo*, No. 01-14-00326-CR at 13-14. The First Court of Appeals explained that it was unnecessary for the State to prove that the participants in the car chase were aware that children were inside the Durango at the time of the collision:

> Injury to a child is a result-oriented offense. *See Williams*, 235 S.W.3d at 750. Thus, the State had to prove that appellant caused A.D.'s serious bodily injury with the requisite criminal intent. *See id.* It was not necessary that appellant knew that A.D. was in the vehicle to establish that he was aware that his conduct in striking Rangel's vehicle and causing an accident was "reasonably certain" to cause injury to other

8

people on the roadway. *See* TEX. PENAL CODE ANN. § 6.03(b) (providing that [a] person acts knowingly with respect to result of his conduct when he is aware his conduct is reasonably certain to cause result). The State was not required to prove that appellant knew that one of the people he was reasonably likely to injure by his acts was a child. *See Zubia*, 998 S.W.2d at 227.

*Bravo*, No. 01-14-00326-CR at 14.

This case departs significantly from the facts relied upon in the *Hull* case to prove that Hull acted knowingly. *Hull v. State*, 871 S.W.2d 786 (Tex. App.−Houston [14th Dist.] 1994, pet. ref'd). Hull fired a bullet into an occupied car without aiming at anyone in particular. *Id.* at 789. While the Fourteenth Court of Appeals, like the First Court of Appeals, noted that Hull's conduct "created a substantial risk that someone in the car would be killed," the Court also focused on the evidence which indicated that Hull knew that the decedent was in the car:

> Although [Hull] denied knowing that [the decedent] was inside Nash's car, his roommate, Joe Alvelvo, testified to the contrary. Alvelvo stated that he overheard Smotherman talking to [Hull] when she came to their front door. Smotherman told [Hull] that there was a guy in the car with a gun, who was talking to [the decedent]. This statement could infer that [the decedent] was inside the car. We believe the evidence supports a finding that [Hull] acted with an awareness that the death of [the decedent] was reasonably certain to result.

*Id.* at 789. In that case, it was only Hull's cognizance that the decedent was inside the car, when coupled with his conduct, that justified conviction using the "knowing" culpable mental state. *Id.*

The parties' lack of cognizance that A.D. was inside the Durango is the critical distinction between Appellant's case and *Hull*. In order to prove that Appellant or his

9

co-defendants knowingly injured A.D., the State was required to prove that Appellant was aware that his conduct was "reasonably certain to cause [A.D.'s injury]." TEX. PENAL CODE § 6.03(b). The parties could not have formed a reasonable certainty that A.D. would be injured in the collision when the parties had no reason to believe that anyone other than Rangel would be injured in the collision. This is not to say that the parties could not have been prosecuted under a different culpable mental state, for example for "disregard[ing] a substantial and unjustifiable risk," but simply that there is no evidence that the parties knowingly injured A.D. TEX. PENAL CODE § 6.03(b, c).

The State cannot look to Section 6.04(b)(2) to supply the requisite culpable mental state. Section 6.04(b)(2) is an important law that ensures that a person is not absolved of responsibility simply because an instance of criminal conduct impacts a bystander rather than the intended victim. However, Section 6.04(b)(2) has limitations: importantly it cannot be used to supply intent under a multiple injury theory of liability involving but a single instance of criminal conduct. *See Ex parte Norris*, 390 S.W.3d at 341; *Granger*, 2015 WL 1875907 at *2 (Tex. Crim. App. Apr. 22, 2015) (mem. op, not designated for publication). Without Section 6.04(b)(2), which does not apply in this case where there where two injuries resulting from a single collision, there is no evidence to support Appellant's conviction for first degree injury to a child. *See Supra* at GROUND ONE.

10

**PRAYER**

Appellant prays that this Court reverse the judgment in the trial court below and enter an order of acquittal, or should this Court determine an acquittal is not warranted, reverse Appellant's case for a new trial on the lesser-included offense of second degree felony injury to a child.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

**/s/** Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

11

## CERTIFICATE OF SERVICE

I certify that a copy of this Appellant's Petition for Discretionary Review (Bravo) has been served upon the Harris County District Attorney's Office − Appellate Section and upon the State Prosecuting Attorney, on August 11, 2015, by electronic service.

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 2,477 words excluding portions not to be counted under TEX. R. APP. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

**APPENDIX**

A. Opinion, *Bravo v. State*, --- S.W.3d ---- , No. 01-14-00326-CR (Tex. App.−Houston [1st Dist.] July 30, 2015).



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00326-CR

_____

**ALEXANDRO JORDAN BRAVO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1335513**

---

## O P I N I O N

A jury convicted appellant, Alexandro Jordan Bravo, of injury to a child and assessed his punishment at twenty-three years' confinement. In three issues, appellant argues that (1) the evidence was insufficient to support his conviction; (2) the jury charge erroneously authorized the jury to convict him on the theory of

transferred intent; and (3) the State's hypothetical law of parties questions during voir dire were improper commitment questions.

We affirm.

**Background**

The complainant, A.D., and several other people were injured when the vehicle in which they were riding, which was driven by A.D.'s father, Steven Rangel, crashed into a light pole after being pursued, chased off the road, and repeatedly rammed by vehicles driven by appellant and an associate. A.D.'s injuries were serious, requiring the amputation of her foot. Appellant was indicted for intentionally or knowingly causing serious bodily injury to a child.

At trial, the evidence established that on January 5, 2012, Rangel loaded his three young children, A.D., S.R., and C.R., into his Dodge Durango and drove to the Key Truck Stop to get his wheels detailed by a friend, Armando Escalante. Rangel sat in the driver's seat of the Durango and talked with Escalante while he polished the rims. Escalante testified that he did not know Rangel had brought the children until he approached the Durango. He stated that he could not see Rangel's children, but he "could hear them in the back."

Two other men, Cody Evans and Mike Estrada, saw Rangel, who acknowledged that he had a history of drug dealing. Evans and Estrada drove a red minivan up next to Rangel's Durango at the truck stop, and Evans exited the

2

vehicle and approached Escalante. Evans shouted at Rangel, accusing him of trying to sell drugs in their territory, and assaulted Escalante. Rangel testified that he was sitting in the driver's seat of the Durango when Evans approached him "cussing and saying don't even come over here" and told him he was "not supposed to be in Chanelview." Rangel stated that he did not yell back and told Evans that he had his kids in the vehicle with him. Rangel also testified that he thought Evans should have been able to hear his kids talking and laughing because the children were "pretty loud" and Evans was standing right by the driver's side door while the window was halfway down.

Rangel drove away from the Key Truck Stop, and Evans and Estrada followed him in the red minivan. Evans also called appellant, who borrowed a friend's black truck and, along with his girlfriend, Melissa Peters, drove to meet them. Evans and Estrada in the minivan and appellant in the black truck continued to pursue Rangel and eventually boxed him in between a ditch and their two vehicles. Rangel testified that Evans got out of the minivan with "something in his hand," so he swerved into the ditch and drove away. Peters testified that Rangel struck Evans with the Durango, throwing him into the air. She stated that she, appellant, and Estrada got out of their vehicles to check on Evans and that she stayed with Evans while appellant pursued Rangel driving the red minivan and Estrada drove after them in the black truck.

3

Appellant and Estrada caught up to Rangel and continued to pursue him. Rangel testified that as he headed toward a nearby police station the red minivan was "hitting the back of his [Durango]." He stated that the black truck then "came around the red van and [he] jumped the curb trying to get away from the cars that were parked at the red light." He testified that the black truck "jumped the curb after him and that's when the truck struck [him] in the back and made [him] lose control" of his vehicle. Another witness testified that she saw the red minivan and the black truck pursuing the Durango at approximately fifty miles per hour, through two red lights. She observed the red minivan block the Durango from changing lanes while the black truck struck it multiple times, causing it to go out of control and hit a light pole. She testified that she saw both the red minivan and the black truck continue down the feeder road without slowing down after the Durango struck the pole.

Rangel suffered a punctured lung, broken collarbone, and six broken ribs in the accident. S.R., who was two years old at the time of the accident, suffered a broken collarbone and lacerations from broken glass. C.R., who was one year old, bit through his tongue and had to have it reattached. A.D., who was three years old, was very severely injured in the crash and lost her foot from just above the ankle.

4

The police who arrived on the scene discovered a trail of fluid and debris that led from the accident site to the black pickup truck. The black truck had significant damage to the front end, matching the debris trail leading up to it. Based on Rangel's information and other witness interviews, the police also located the red minivan. Rangel identified appellant, Evans, Estrada, and Peters from a photographic lineup. The State charged appellant, Evans, and Estrada with respect to the crash.

Deputy R. Gutierrez, an accident-reconstruction specialist, testified that the damage to the Durango indicated that the crash was not a single car accident. He suspected that three cars were involved. He observed red paint transfer on the right rear quarter panel and on the rear of the Durango, indicating that the Durango had contact with a red vehicle consistent with the red minivan. He also testified that the Durango had paint transfer consistent with the black truck. Deputy Gutierrez viewed the Durango, the black truck, and the red minivan and testified, "based on the damage [to] the minivan and then the damage on the [Durango]" that "the minivan struck the left front corner of the Dodge Durango, which caused it to rotate clockwise towards that metal pole." He stated that, based on his training and experience, the red minivan was the vehicle responsible for sending the Durango sideways and into the pole. He testified that the black truck hit the Durango in the back, which would not "cause any rotation to either vehicle base." He further

5

testified that the impact from either vehicle alone—either from the black truck or the red minivan—could have "cause[d] a serious accident."

The jury charge instructed the jury that "[o]ur law provides that a person commits an offense if he intentionally, knowingly, or with criminal negligence, by act, causes to a child, serious bodily injury." The charge also instructed the jury on the law of parties, stating that "[a] person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." It further instructed the jury on the elements of aggravated assault.

The charge allowed the jury to convict appellant if it found

> from the evidence beyond a reasonable doubt that on or about the 5th day of January, 2012, in Harris County, Texas, [appellant] did then and there unlawfully, intentionally or knowingly cause serious bodily injury to [A.D.], a child younger than fifteen years of age, by striking a motor vehicle occupied by [A.D.] with a motor vehicle; or
>
> If [it found] from the evidence beyond a reasonable doubt that on or about the 5th day of January, 2012, in Harris County, Texas, Michael Estrada, did then and there unlawfully, intentionally or knowingly cause serious bodily injury to [A.D.], a child younger than fifteen years of age, by striking a motor vehicle occupied by [A.D.] with a motor vehicle, and that [appellant], with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Michael Estrada to commit the offense, if he did; or
>
> If [it found] from the evidence beyond a reasonable doubt that [appellant], and Cody Lee Evans and/or Michael Estrada entered into an agreement to commit the felony offense of aggravated assault, and pursuant to that agreement, if any, they did carry out their conspiracy

6

and that in Harris County, Texas, on or about the 5th day of January, 2012, while in the course of committing such aggravated assault, Cody Lee Evans and/or Michael Estrada intentionally or knowingly caused serious bodily injury to [A.D.], a child younger than fifteen years of age, by striking a motor vehicle occupied by [A.D.] with a motor vehicle, and the serious bodily injury to [A.D.] was committed in furtherance of the conspiracy and was an offense that should have been anticipated by [appellant] as a result of carrying out the conspiracy, then you will find [appellant] guilty of intentionally or knowingly causing serious bodily injury to a child younger than fifteen years of age, as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether [appellant] is guilty of the lesser offense of with criminal negligence causing serious bodily injury to a child younger than fifteen years of age.

The jury charge went on to instruct the jury on finding appellant guilty based on acting with criminal negligence, either as the principal actor or as a party.

Finally, it instructed the jury on the doctrine of transferred intent:

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person or property was injured, harmed, or otherwise affected.

Now, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 5th day of January, 2012, [appellant] and Cody Lee Evans and/or Michael Estrada, did then and there unlawfully and intentionally or knowingly or with criminal negligence drive a motor vehicle at another person, intending or knowing that serious bodily injury would occur to the other person, but instead, struck a motor vehicle occupied by [A.D.], causing serious bodily injury to [A.D.], a child younger than fifteen years of age, then you find the defendant guilty of intentionally or knowingly causing serious bodily injury to a child younger than fifteen years of age, as charged in the indictment.

7

Appellant objected to the instruction on transferred intent. Specifically, appellant cited *Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008), and asserted that the application paragraph following the instruction on transferred intent "improperly applies the law of transferred intent to this particular case. . . ." Appellant also objected on the basis that "there is an improper application of the law of parties within the transferred intent paragraph" and based on the "inclusion of improper culpable mental state" within the transferred intent application paragraph. Finally, appellant objected because the transferred intent application paragraph referred only to the intent to hurt "another person" and did not name anyone specifically. The trial court overruled appellant's objections.

The jury convicted appellant, and the foreman signed the statement asserting that found "the defendant, Alexandro Jordan Bravo, guilty of intentionally or knowingly causing serious bodily injury to a child younger than fifteen years of age, as charged in the indictment." The jury subsequently assessed his punishment at twenty-three years' confinement and a $10,000 fine.

This appeal followed.

### Sufficiency of the Evidence

In his first issue, appellant argues that the evidence was insufficient to support his conviction.

## A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the

9

verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### 1.  *Injury to a Child*

A person commits the offense of injury to a child if he "intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . serious bodily injury." TEX. PENAL CODE ANN. § 22.04(a)(1) (Vernon Supp. 2014); *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006). The offense is a first degree felony when the conduct is committed intentionally or knowingly. TEX. PENAL CODE ANN. § 22.04(e). The offense is a "state jail felony when the person acts with criminal negligence." *Id.* § 22.04(g).

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a) (Vernon 2011). A person acts knowingly with respect to a result of his conduct when he is aware his conduct is reasonably likely to cause the result. *Id.* § 6.03(b). "Injury to a child is a result-oriented offense requiring a mental state that relates not to the specific conduct but to the result of that conduct." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Thus, "[t]he State must prove that a defendant caused a child's serious bodily injury with the requisite criminal intent." *Id.*; *see also Jefferson*, 189 S.W.3d at 312 ("This Court's prior case-law also supports a decision that the essential element or focus of the statute is the result of the defendant's conduct (in this case, serious bodily injury to a child) and not the possible combinations of conduct that cause the result."); *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (holding that because injury-to-child statute does not specify "nature of conduct," conduct is inconsequential to its commission as long as conduct is voluntary and done "with the required culpability to effect the *result* the Legislature has specified") (emphasis in original); *Beggs v. State*, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980) (stating that injury to child statute focuses on result of defendant's conduct).

Direct evidence of the required mental state is not required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Instead, the required culpable mental state

may be inferred from the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984).

### 2. Transferred Intent

Penal Code section 6.04 provides, "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different offense was committed [or] a different person or property was injured, harmed, or otherwise affected." TEX. PENAL CODE ANN. § 6.04(b) (Vernon 2011); *Thompson v. State*, 236 S.W.3d 787, 792 (Tex. Crim. App. 2007). The Court of Criminal Appeals has applied the doctrine of transferred intent to injury-to-a-child cases. *See Thompson*, 236 S.W.3d at 792; *Zubia v. State*, 998 S.W.2d 226, 227 (Tex. Crim. App. 1999) (agreeing with court of appeals that injury-to-child statute "does not require the State to prove [the appellant] had intent or knowledge in connection with the victim's age" and State could "prove its case relying on transferred intent").

## B. Analysis

Here, appellant argues that the State offered no evidence that either he or Estrada knew that Rangel's children were inside the Durango at the time of the chase and subsequent crash. He further argues that the State offered some evidence to demonstrate his intent to injure Rangel, but the doctrine of transferred

12

intent "cannot be used when there was a single assault seriously injuring [Rangel], the target of the assault, along with his children." Appellant argues that "there is no evidence proving that the parties charged with A.D.'s injury had the requisite mens rea to support the conviction for an intentional or knowing act in this case." We disagree.

Injury to a child is a result-oriented offense. *See Williams*, 235 S.W.3d at 750. Thus, the State had to prove that appellant caused A.D.'s serious bodily injury with the requisite criminal intent. *See id.* It was not necessary that appellant knew that A.D. was in the vehicle to establish that he was aware that his conduct in striking Rangel's vehicle and causing an accident was "reasonably certain" to cause injury to other people on the roadway. *See* TEX. PENAL CODE ANN. § 6.03(b) (providing that person acts knowingly with respect to result of his conduct when he is aware his conduct is reasonably certain to cause result). The State was not required to prove that appellant knew that one of the people he was reasonably likely to injure by his acts was a child. *See Zubia*, 998 S.W.2d at 227.

We conclude that the evidence was sufficient to demonstrate that appellant was aware that his conduct was reasonably likely to result in injury and that it did result in serious bodily injury to A.D., a child under the age of fifteen. Multiple witnesses at trial testified that appellant participated in a vehicle chase over several miles and through two red lights, ramming the Durango multiple times. Rangel

13

testified that appellant, driving the red minivan, blocked him from changing lanes, while Estrada in the black truck rammed the back of his car, causing him to lose control of the Durango and eventually crash into a pole. Deputy Gutierrez testified that a collision with the red minivan caused Rangel's vehicle to skid sideways and into the pole and that the damage caused by the minivan was itself sufficient to cause a serious accident. After Rangel lost control of the Durango and crashed, appellant sped away from the scene without rendering aid. *See Baldwin v. State*, 264 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("A jury may reasonably infer that the defendant intentionally, not accidentally, inflicted the injury when the defendant fails to render aid known to be needed.").

Furthermore, appellant's reliance on *Roberts* to argue that the doctrine of transferred intent should not apply here is unavailing. Courts have applied the doctrine of transferred intent to injury-to-a-child cases. *See Thompson*, 236 S.W.3d at 792; *Zubia*, 998 S.W.2d at 227. In *Roberts*, the appellant was not charged with injury to a child; he was charged with capital murder by causing the death of two individuals—the adult complainant and her unborn child. 273 S.W.3d at 329. The court held that "[t]ransferred intent may be used as to a second death to support a charge of capital murder that alleges the deaths of more than one individual during the same criminal transaction only if there is proof of intent to kill the same number of persons who actually died." *Id.* at 331. It concluded that

14

the evidence was insufficient to support the appellant's conviction for intentionally or knowingly causing the death of the unborn child because it was undisputed that he lacked knowledge of the child's existence and thus could not have formed a separate specific intent to kill the fetus as required by the capital murder statute. *Id.* at 331–32.

In subsequent opinions, the Court of Criminal Appeals has pointed out the limitations of this holding. *See Ex parte Norris*, 390 S.W.3d 338, 341 & n.28 (Tex. Crim. App. 2012) (stating that in some circumstances, State may use transferred intent in capital-murder prosecutions alleging multiple or serial murders). The Court of Criminal Appeals has observed that the capital murder statute is distinctive in that it "contains what appears to be a sort of anti-transfer element; thus transferring intent from . . . lesser offenses to capital murder would be impermissible." *Louis v. State*, 393 S.W.3d 246, 253 (Tex. Crim. App. 2012) (citing *Thompson*, 236 S.W.3d at 799–800). The court has likewise observed that those concerns are not applicable in injury-to-a-child cases:

> Given the plain language and the history of the provisions at issue, we conclude that [the transferred intent statute] does indeed authorize the transfer of a culpable mental state between offenses contained in the same statute and also between greater and lesser included offenses. That authorization may be overridden by language defining a particular offense, as in the offense of capital murder, but no such impediment arises with respect to the injury-to-a-child offense.

*Thompson*, 236 S.W.3d at 800.

Thus, the holding in *Roberts* was unique to the facts of that particular case and the allegations that Roberts committed capital murder by killing two people in the same criminal transaction. *See* 273 S.W.3d at 329–31. Appellant has cited no statutory language or other authority overriding Penal Code section 6.04's authorization to transfer his intent to injure Rangel to support his culpability for injuring A.D. as well. *See Thompson*, 263 S.W.3d at 800.

We overrule appellant's first issue.

## Charge Error

In his second issue, appellant argues that the jury charge erroneously authorized the jury to convict him on the theory of transferred intent.

### A.    Standard of Review

The trial court must give the jury a written charge that sets forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). We review a claim of jury-charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984), which first requires us to determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). When, as here, the appellant has properly preserved a claim of charge error by an objection or request for instruction, we must reverse if the error

is calculated to injure the defendant's rights, that is, if there was "some harm." *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003).

"We examine the relevant portions of the entire record to determine whether appellant suffered any actual harm as a result of the error." *Jimenez v. State*, 419 S.W.3d 706, 716 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986) (en banc)); *see also Almanza*, 686 S.W.2d at 171 (holding that "an error which has been properly preserved by objection will call for reversal as long as the error is not harmless"). We must reverse if we find "some actual, rather than merely theoretical, harm from the error." *Jimenez*, 419 S.W.3d at 716 (citing *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)). We are more likely to find "some harm" when the error "go[es] to the central issue in the case." *Id.* (citing *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008)).

**B.    Analysis**

Appellant argues that the trial court erred in submitting an instruction on transferred intent because that doctrine "does not apply when a person's conduct injures not only the original target, but a different person as well." As discussed above, this argument is unavailing. We conclude that there was no error in submitting an instruction on transferred intent to the jury in this case. Thus, we

17

need not address appellant's arguments that he was harmed by the jury's potential reliance on the doctrine of transferred intent. *See Ngo*, 175 S.W.3d at 743.

Appellant also argues that the charge is erroneous because it "misstates both the controlling law and the facts in this case" and that these errors harmed him because they "permitted a conviction for intentional or knowing serious bodily injury to a child if the jury believed that the parties acted merely with criminal negligence."

Here, the jury charge correctly set out instructions permitting the jury to convict appellant of intentionally or knowingly causing serious bodily injury to A.D. The charge permitted the jury to convict appellant of the charged offense based three different theories: (1) if appellant "intentionally or knowingly cause[d] serious bodily injury to [A.D.] . . . by striking a motor vehicle occupied by [A.D.] with a motor vehicle"; (2) if Estrada intentionally or knowingly caused the injury and appellant participated as a party; or (3) if appellant, Evans, and/or Estrada entered into a conspiracy to commit an aggravated assault, Evans and/or Estrada caused serious bodily injury to A.D. in the furtherance of committing the aggravated assault, and appellant should have anticipated the offense.

In separate paragraphs, the jury charge set out the lesser-included offense of injury to a child by a criminally negligent act. The charge stated, "[I]f you have a reasonable doubt [that appellant intentionally or knowingly caused serious bodily

18

injury to A.D.], or if you are unable to agree, you will next consider whether [appellant] is guilty of the lesser offense of with criminal negligence causing serious bodily injury to a child younger than fifteen years of age." The jury charge then set out the different bases on which the jury could convict appellant of causing serious bodily injury with criminal negligence, either as a primary actor or as a party.

After these instructions, the charge provided an instruction on transferred intent and an application paragraph:

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person or property was injured, harmed, or otherwise affected.
> Now, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 5th day of January, 2012, [appellant] and Cody Lee Evans and/or Michael Estrada, did then and there unlawfully and intentionally or knowingly *or with criminal negligence* drive a motor vehicle at another person, intending or knowing that serious bodily injury would occur to the other person, but instead, struck a motor vehicle occupied by [A.D.], causing serious bodily injury to [A.D.], a child younger than fifteen years of age, then you find the defendant guilty of intentionally or knowingly causing serious bodily injury to a child younger than fifteen years of age, as charged in the indictment.

(Emphasis added).

Appellant complains of the inclusion of the phrase "or with criminal negligence" in the application paragraph of the transferred intent instruction and argues that it "misstates both the controlling law and the facts in this case." We

19

observe that the instruction regarding transferred intent applied either to intentional or knowing injury or to injury caused by criminal negligence. *See* TEX. PENAL CODE ANN. § 22.04(a) (providing that person commits offense if he "intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . serious bodily injury"); *Thompson*, 236 S.W.3d at 799–800 (permitting application of transferred intent doctrine in injury-to-child cases). The remainder of the transferred intent application paragraph, however, focused solely on intentional or knowing serious bodily injury as alleged in the indictment against appellant. It allowed conviction for intentional or knowing serious bodily injury to a child if appellant, "intending or knowing that serious bodily injury would occur to the other person, but instead, struck a motor vehicle occupied by [A.D.], [and] caus[ed] serious bodily injury to [A.D.]."

We conclude, based on an examination of the entirety of the jury charge and record, that any error in the trial court's inclusion of the phrase "with criminal negligence" in the application paragraph did not result in actual harm to appellant. *See Jimenez*, 419 S.W.3d at 716. As stated above, the jury charge correctly and clearly set out the theories under which appellant could be convicted of intentionally or knowingly causing serious bodily injury to A.D. It provided separate, correct instructions for finding appellant guilty of the lesser-included offense of causing serious bodily injury to A.D. by acting with criminal

negligence. The application paragraph of the transferred intent instruction itself permitted appellant to be convicted of intentionally or knowingly causing serious bodily injury to A.D. only if he intended or knew that serious bodily injury would occur to another person, but instead, struck a motor vehicle occupied by A.D., causing her serious bodily injury.

The evidence was overwhelming that appellant, Evans, and Estrada intended to cause injury to Rangel by engaging in a protracted chase and striking his vehicle, and we have already held that the trial court properly allowed the application of the transferred intent doctrine here. We have likewise held that the evidence was sufficient to demonstrate that appellant was aware that his conduct was reasonably likely to result in injury and that it did result in serious bodily injury to A.D. We also observe that neither party repeated the complained-of language during closing argument, and the State properly explained the law during its closing argument. Nothing in the record indicates that the jury was confused about the difference between the intentional or knowing offense as charged and the lesser included offense involving criminal negligence as those issues were set out in the jury charge. Thus, we hold that there was no "actual, rather than merely theoretical, harm" from the alleged error. *See id.*

We overrule appellant's second issue.

## Voir Dire

In his third issue, appellant argues that the State's hypothetical law-of-parties questions asked during voir dire were improper commitment questions.

### A.     Standard of Review

We review a trial court's ruling on an allegedly improper commitment question during voir dire for an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

Improper commitment questions are prohibited to "ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). Commitment questions "require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context." *Id.*; *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (holding that commitment questions "are those that commit a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact"). Not all commitment questions, however, are improper. *Standefer*, 59 S.W.3d at 181.

The Court of Criminal Appeals has articulated a three-part test for determining whether a voir dire question is an improper commitment question. *Id.*

at 179–84; *Braxton v. State*, 226 S.W.3d 602, 604 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd). First, the trial court must determine whether the particular question is a commitment question. *Standefer*, 59 S.W.3d at 179. A question is a commitment question if "one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Id.* at 180.

Second, if the question is a commitment question, the trial court must then determine whether it is a proper commitment question. *Id.* at 181 ("When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard."); *Braxton*, 226 S.W.3d at 604. A commitment question is proper if one of the possible answers to the question gives rise to a valid challenge for cause. *Standefer*, 59 S.W.3d at 182; *Braxton*, 226 S.W.3d at 604. If the question does not, then it is not a proper commitment question, and it should not be allowed by the trial court. *Standefer*, 59 S.W.3d at 182.

Third, if the question does give rise to a valid challenge for cause, then the court must determine whether the question "contain[s] only those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* "Additional facts supplied beyond what is necessary to sustain a challenge for cause render

improper what otherwise would have been a proper question." *Braxton*, 226 S.W.3d at 604.

A venire member can be challenged for cause if she "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3) (Vernon 2006); *Delacerda v. State*, 425 S.W.3d 367, 382 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A prosecutor is allowed to use hypothetical fact situations in order to explain the application of a particular law to the jury panel. *Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim. App. 1994); *see also Lee v. State*, 176 S.W.3d 452, 461 (Tex. App.—Houston [1st Dist.] 2004 ("The use of a hypothetical fact situation during voir dire is permissible if it is used 'to explain the application of the law.'"), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). However, the prosecutor may not go beyond hypotheticals and attempt to commit an individual prospective juror to a particular course of action based upon a certain factual situation. *Cuevas v. State*, 742 S.W.2d 331, 343 (Tex. Crim. App. 1987); *see also Lee*, 176 S.W.3d at 461–62 (holding that hypothetical was not overbroad when it "did not contain additional facts specific to the case at bar that [were] unnecessary to explain the application of the law").

## B.  Complained-of Voir Dire Questions

During voir dire, the State discussed the concept of party liability with the venire and posed questions regarding a hypothetical bank robbery that involved multiple people: a gunman who "goes in the bank and puts the gun on the teller and says give me the money"; the bag man who "actually starts taking the cash and dumping it in the bag"; the getaway driver; and the "master mind" who "came up with the plan" and coordinated the other individuals, but at the time of the robbery was "sitting at home eating ice cream and watching soap operas."  The State then asked, "[K]eeping in mind the law of parties, who is guilty of this armed bank robbery?"

Appellant objected that this was an improper commitment question, and the trial court overruled the objection.  The State then proceeded to question the entire venire panel regarding whether all four parties in the hypothetical scenario were guilty of robbing the bank.  One venire member answered "maybe," and another expressed concern regarding different defenses that might be available to some members of a conspiracy but not to others.  Another venire member sought clarification regarding what the State would have to prove—i.e., that each participant was "connected" with the crime somehow.

The State then continued its hypothetical:

> If someone has a conspiracy to commit a crime and there are several parties involved, maybe one party takes things a little bit too far.

25

Maybe that bank robber, when he goes in with the gun, shoots the clerk when she refuses to hand over the money.

Now we are not talking about an armed robbery. We are talking about a possible murder charge. We are going to have the same questions in the murder case of those same four persons.

. . .

Is [the shooting of the clerk who refused to hand over the money] in furtherance of committing the armed robbery. I'm getting some people nodding. . . . Anyone disagree that shooting or that death would be in furtherance of that armed robbery?

Appellant objected again, and the trial court denied his objection.

The State also discussed the foreseeability of the shooting. The State asserted that "the law of parties can go beyond just the planned crime if it's reasonably foreseeable" and asked, "[W]as that [shooting of the clerk] reasonably foreseeable when they planned that armed robbery, when they went into the bank[?] Well, who here has an opinion on that[?] One way or the other. Yes or no." The State questioned the entire venire panel regarding whether all four parties would be guilty of the hypothetical murder. Again, appellant objected that this was an improper commitment question, and the trial court overruled the objection.

C.    Analysis

The State does not challenge appellant's assertions that the complained-of questions were commitment questions. It argues instead that they were proper

26

commitment questions.[1]  Accordingly, we assume, without deciding, that the complained-of questions were commitment questions and turn to the second prong of the *Standefer* test.

We conclude that the prosecutor's questions about the culpability of each party in the hypothetical robbery, about the parties' culpability for any other crime committed by one of them in the course of the robbery, and about the foreseeability of another crime committed in the course of the robbery were proper commitment questions because one of the possible answers to each question gave rise to a valid challenge for cause.  *See Standefer*, 59 S.W.3d at 182; *Braxton*, 226 S.W.3d at 604. The State's hypothetical and questions all served the purpose of illustrating principles of law that were applicable to appellant's case, such as the law of parties, and tested the venire members' potential bias and ability to apply those doctrines.  *See Delacerda*, 425 S.W.3d at 382 (holding that venire member can be challenged for cause if she "has a bias or prejudice against any phase of the law upon which the State is entitled to rely" for conviction or punishment) (citing TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3)); *Lee*, 176 S.W.3d at 461 ("The use of a hypothetical fact situation during voir dire is permissible if it is used 'to explain the application of the law.'").

---

[1]  The State also argued that appellant failed to preserve his complaints regarding these questions.  However, the record, as recounted above, demonstrated that appellant made multiple, specific objections to the prosecutor's questions that were sufficient to preserve this issue for appeal.  *See* TEX. R. APP. P. 33.1.

Regarding the third prong of the *Standefer* test, we conclude that the hypothetical and questions "contain[ed] only those facts necessary to test whether a prospective juror is challengeable for cause." *See* 59 S.W.3d at 182. The prosecutor's hypothetical contained only the information necessary to establish varying levels of participation in a hypothetical crime and to ascertain whether potential jurors would be biased against applying the law of parties. The questions actually did reveal some bias among the venire members and resulted in at least one juror's being struck for cause. Furthermore, the hypothetical and questions did not contain any additional facts specific to the present case that were unnecessary to explain the application of the law and to determine whether the venire members had a bias against applying that law—the only similarity between the questions posed and the case here was the presence of multiple actors with varying types of involvement in the crime. *See Lee*, 176 S.W.3d at 461 (holding that hypothetical was not overbroad when it "did not contain additional facts specific to the case at bar that [were] unnecessary to explain the application of the law").

We conclude that the complained-of voir dire questions were proper commitment questions. Accordingly, the trial court did not abuse its discretion in permitting them. *See Barajas*, 93 S.W.3d at 38.

We overrule appellant's third issue.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Publish.  TEX. R. APP. P. 47.2(b).