# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00247-CR

**Kayla Jean Lardieri, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2014-090, HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant of the offenses of attempted capital murder, *see* Tex. Penal Code § 19.03, aggravated robbery, *see id.* § 29.03, aggravated kidnapping, *see id.* § 20.04, and tampering with physical evidence, *see id.* § 37.09. In three issues, appellant challenges the factual sufficiency of the evidence to support the convictions against her as the principal actor or a party. *See id.* §§ 7.01(a), 7.02; *Johnson v. State*, 23 S.W.3d 1, 10–12 (Tex. Crim. App. 2000) (describing factual sufficiency standard of review). The Texas Court of Criminal Appeals, however, has directed reviewing courts that the legal sufficiency standard in *Jackson v. Virginia*, 443 U.S. 307 (1979), "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Applying the

*Jackson* legal sufficiency standard, we conclude that the evidence was sufficient to support the convictions and affirm.

## BACKGROUND[1]

On a freezing night in December 2013, appellant, who was seventeen years old, along with two other women, attacked the victim in the back bedroom of a trailer in Comal County. The women had asked the victim to come to the back bedroom and then confronted her with accusations that she was an "informant," had recorded drug transactions, "cloned" phones, and had slept with one of the other women's boyfriend. Prior to the attack, the victim took her clothes off to show the women that she did not have a "wire" on her. After the victim took off her clothes, appellant stabbed the victim with a knife, tased the victim "anywhere in between seven to ten times," and beat and kicked her. One of the other women also tased, stabbed, beat, and kicked the victim, and the third woman recorded part of the attack. The women also prevented the victim from leaving by "stomping" on her and putting their body weight on her when the victim tried to leave the room. The victim, who remained naked, was then handcuffed, gagged, blindfolded, shackled, hogtied, and wrapped in a sheet. Appellant helped carry the victim, wrapped in the sheet, out to a shed on the property, and the victim was left in the shed with the door locked. The victim's possessions in the trailer were gathered, and appellant accompanied her boyfriend with the victim's backpack and her

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

other possessions, including her phone, to another location that had a fire pit, where "[they] all burnt it all," including appellant's clothing that she was wearing during the attack.[2]

At some point during the night, the victim was able to remove the handcuffs from her hands (but not the ones on her ankles). She then "threw" herself out an open window in the shed, crawled across the street, obtained a blanket from a neighbor's porch, and got into the neighbor's unlocked car. The following morning the victim began honking the car horn, and the neighbor found her in the car, "frantic," "bleeding," naked, and with her ankles still cuffed. Although the victim "begged" the neighbor not to call the police because the victim was afraid "that they would kill her," the neighbor called the police. Police and emergency personnel arrived at the scene, and the victim was transported by ambulance to a hospital. The victim was able to identify her assailants, including appellant, and to describe the events of the prior night in detail.

Appellant was arrested and then indicted several months later. Appellant entered a plea of not guilty to each charge against her, and the case was tried before a jury. The State's witnesses included the victim, the neighbor who found her, investigating deputies and detectives with the Comal County Sheriff's Office, co-defendants who were granted testimonial immunity, including her boyfriend, and a woman who had discussed the incident with appellant while they were both in jail. The State's exhibits included photographs of the trailer and shed, the cuffs, chains, and gag that were used on the victim, and the victim's wounds; a video recording of the scene of the crime; a video recording of a police interview of appellant's boyfriend; and audio recordings of

---

[2] Appellant presented evidence including her own testimony to support her position that she did not rob the victim or destroy evidence.

interviews of the victim while she was being treated at the hospital. There were also photographs of the burnt items that were found in the location where the victim's possessions were burned, including the remains of a burnt phone, metal wallet, and one of the victim's pay stubs. The physical evidence included the cuffs and other items that were used to detain the victim, and the sheet that appellant and the co-defendants wrapped the victim in before locking her in the shed. The police, however, were unable to locate the knives, tasers, or alleged recording of the attack, and the victim never recovered any of her possessions that she had taken to the trailer, including her phone, clothes, metal wallet, a necklace, and a laptop.

The defense's witnesses included appellant, a "cousin's cousin" of the victim who testified that the victim told him that "it wasn't as bad as everybody seemed—that it looked to everybody," and another individual who was in jail with appellant. This individual testified that the other individual who was in jail and testified for the State had a "bad" reputation for being truthful and that she observed that appellant was "[s]ad and remorseful, that she regretted it." During her testimony, appellant admitted that she was involved in the incident, including that she stabbed, kicked, and tased the victim, but she explained that the plan was just "to scare her off" and that she never intended to kill or rob the victim. She also testified that they were all smoking methamphetamine the night of the incident. As to stabbing the victim, appellant testified that the victim "ran into" her knife when the victim was "lunging" and that she kicked the victim by "reflex" when the victim kicked her. She, however, admitted to tasing the victim multiple times. She further testified that she did not attempt to help the victim because she was afraid of one of the other

4

women, who looked "crazed," and also because she "didn't want to get into trouble" and that she also deleted the recording that was made by one of the other women during the incident.

The court's charge authorized the jury to convict appellant for each of the charged offenses under different theories as the principal actor or as a party. *See* Tex. Penal Code §§ 7.01, 7.02. The jury thereafter found appellant guilty of attempted capital murder, *see id.* § 19.03, aggravated robbery, *see id.* § 29.03, aggravated kidnapping, *see id.* § 20.04, and tampering with evidence, *see id*. § 37.09, but acquitted appellant of aggravated sexual assault, *see id*. § 22.021. The punishment phase of the trial was to the bench. The trial court thereafter entered judgments in accordance with the jury's verdict of guilty and sentenced appellant to confinement for ten years for the offense of tampering with physical evidence and confinement for thirty years for the offenses of attempted capital murder, aggravated robbery, and aggravated kidnapping, with the sentences to run concurrently. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## ANALYSIS

In her three issues, appellant challenges the factual sufficiency of the evidence to support the convictions of the offenses of attempted capital murder, aggravated robbery, and tampering with evidence against her. As previously stated, the *Jackson* legal sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *See Brooks*, 323 S.W.3d at 912. We therefore review the sufficiency of the evidence as to the challenged convictions under the *Jackson* standard.

5

**Standard of Review**

Under the *Jackson* standard, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902. We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. art. 38.04 (stating that jury generally "is the exclusive judge of the facts proved"); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

We must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 198 (2015). The standard of review is the same for direct and circumstantial evidence cases—circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

6

**Attempted Capital Murder**

In her first issue, appellant challenges the sufficiency of the evidence to support the conviction for attempted capital murder against her as the principal actor or as a party to the offense. *See* Tex. Penal Code §§ 7.01(a) (holding person "criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both"), 7.02 (addressing various ways that person is criminal responsibility for conduct of another). As indicted in this case, a person commits the offense of capital murder if the person intentionally commits murder in the course of committing or attempting to commit kidnapping. *See id.* § 19.03(a)(2); *see also id.* § 19.02(b)(1) ("A person commits [murder] if he: (1) intentionally or knowingly causes the death of an individual."). Murder is a "result of conduct" offense, which requires that the culpable mental state relate to the causing of the victim's death. *Roberts v. State*, 273 S.W.3d 322, 328–29 (Tex. Crim. App. 2008), *abrogated in part by Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012); *see Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). A person acts "intentionally, or with intent," with respect to a result of his conduct when it is his "conscious objective or desire" to cause the result. Tex. Penal Code § 6.03(a). Regarding an attempt to commit an offense, "[a] person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id*. § 15.01(a).

Here, appellant does not challenge the conviction against her for aggravated kidnapping, and she does not dispute that she participated in attacking the victim and then carrying her to the shed wrapped in a sheet. She restricts her sufficiency challenge to the element of the

7

culpable mental state, arguing that "[t]here was no testimony during trial that any one of the Co-Defendants ever intended to kill the complainant" and, therefore, the evidence was insufficient to support a conviction against appellant based on her own conduct or the conduct of another for whom she was criminally responsible, *see id.* §§ 7.01(a), 7.02(a)(2), or, alternatively, under the theory that she should have anticipated that one of the conspirators would attempt to kill the victim, *see id.* § 7.02(b).

The requisite culpable mental state, or *mens rea*, is almost always proved by circumstantial evidence. *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth 2014, pet. ref'd); *see Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("[M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."); *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."). "Motive is a significant circumstance indicating guilt," and intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In addition, intent can be inferred from the extent of the injuries to the victim. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

Appellant presented evidence to support her theory that she and the other co-defendants did not intend to kill the victim but only to scare her. Appellant testified that she did not intend to kill the victim, and her boyfriend testified that, before the attack occurred, the assumption was that "they were going to rough her up a little bit. They were going to beat her up,

8

and that was all." Appellant also downplayed her role in the attack—testifying that she only inflicted one stab wound when the victim "lunged" and only kicked the victim once as a "reflex." She explained that she did not attempt to help the victim because she "was afraid to get in trouble" and also of another co-defendant, she was only seventeen years old compared with the other co-defendants who were much older, and she along with other co-defendants had been smoking methamphetamine. Faced with conflicting evidence, however, the jury could have found appellant's testimony that she did not intend to commit murder not credible. *See Clayton*, 235 S.W.3d at 778–79 (noting that jury entitled to weigh and resolve conflicts in evidence and draw reasonable inferences therefrom and that "most importantly, the jury was able to assess [defendant]'s credibility and demeanor" during his testimony). The jury could have credited the largely undisputed evidence about the attack, the extent of the victim's injuries, and subsequent actions by appellant and the co-defendants of taking and leaving the victim naked, handcuffed, shackled, gagged, blindfolded, and hogtied in the locked shed on a freezing night and reasonably inferred appellant's intent to commit murder. *Id.*

Although appellant's own testimony downplayed the extent of the injuries that she inflicted on the victim, other evidence showed that appellant beat, stabbed, kicked, and tased the victim repeatedly and that she helped carry the victim to the shed despite being aware of the serious nature of the victim's wounds. Appellant admitted during her testimony that the "stab wound that I made was bleeding fairly—a lot," that she tased the victim between seven and ten times, that the victim had marks all over her, and that, after the attack, she "noticed that it looked as if she wasn't breathing very well." Appellant's boyfriend testified consistently that "towards the end of

9

everything," appellant told him that she thought that the victim was "bleeding out." Another co-defendant testified that she thought the victim had a punctured lung from the attack based on her observation of the victim's "tired breathing." Appellant further testified that a co-defendant told appellant that she thought that the victim was "going to die fairly soon," "was talking about disposing of the body in her mother's fire pit" and suggested putting the victim in the bathtub, but appellant responded that "[w]e're not going to do either because there's people in the house." Another co-defendant suggested taking the victim to a pig farm to "get rid of the body." Eventually, however, the co-defendants agreed to take her out to the shed wrapped in a sheet. After they locked the victim in the shed, a co-defendant testified that she "figured that [the victim] was going to die" "because she was bleeding so bad and it was cold." Appellant's boyfriend testified consistently that when they left the victim in the shed, she was not conscious but "motionless," "lifeless," and "bleeding out." The inmate in the county jail that the State called as a witness further testified that appellant told her that appellant thought the victim was "dead" when they put her in the shed and "that's what [appellant] wanted." *See Guevara*, 152 S.W.3d at 50 (noting that "[m]otive is a significant circumstance indicating guilt").

The evidence about the extent of the victim's injuries also supported a reasonable inference that appellant intended to commit murder. *See Patrick*, 906 S.W.2d at 487 (noting that intent may be inferred from extent of injuries to victim). The victim provided her account of the events of that night and her injuries, including the multiple stab wounds on her thigh, back, and neck. She testified that she feared for her life and thought that they were going to kill her; that appellant stabbed her in her "left thigh very deeply" causing her to bleed "profusely"; that appellant was the

10

"most aggressive of all" and was going for the victim's face; that the victim was stabbed on her hands when she was shielding her face; and that the women kicked her on the side of the head and ribs "hitting [her] over and over." The victim also provided testimony about being left in the shed naked, handcuffed, shackled, gagged, blindfolded, and hogtied, how she escaped, and the extended medical treatment that she received. The victim's testimony was consistent with the testimony from other witnesses and the physical evidence. The neighbor who found her the following morning testified that the victim's ankles were cuffed tightly so that she could not move at all and she was "frantic" and "bleeding"; one of the deputies who was dispatched to the scene described the victim as looking "like a corpse, like the walking dead"; and a certified paramedic described the victim sitting in the neighbor's car as "[c]ompletely covered in blood, dry blood," screaming, and "hysterical crying." The paramedic also testified that "her blood pressure was very low and we noticed that she needed probably some fluids to replace. She was also very cold. It was very cold that morning."

Viewing the evidence in the light most favorable to the verdict and assuming that the jury resolved the conflicts in the evidence in favor of the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant intended to commit the offense of capital murder. *See Jackson*, 443 U.S. at 319; *see also* Tex. Penal Code §§ 19.02(b)(1), 19.03(a)(2). Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict for the offense of attempted capital murder against appellant as a principal actor and do not address the evidence to support her conviction as a party for this offense. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (citing *Guevara*, 152 S.W.3d at 49 (citing *Rabbani*

11

*v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992))) ("When the charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge."); *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999) (citing *Rabbani* for principle that, when court undertakes sufficiency review and trial court's charge authorized jury to convict on more than one theory, "the verdict of guilt will be upheld if the evidence is sufficient on any one of the theories"). We overrule appellant's first issue.

**Aggravated Robbery**

In her second issue, appellant similarly challenges the sufficiency of the evidence to support the conviction for aggravated robbery against her as the principal actor or as a party to the offense. *See* Tex. Penal Code §§ 7.01(a), 7.02. A person commits the offense of aggravated robbery if he commits robbery and "uses or exhibits a deadly weapon." *See id.* § 29.03(a)(2). A person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id*. § 29.02(a). "A person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a); *see Byrd v. State*, 336 S.W.3d 242, 250–51 (Tex. Crim. App. 2011). "'Appropriate' means . . . to acquire or otherwise exercise control over property other than real property." Tex. Penal Code § 31.01(4)(B). The intent to commit theft may be inferred from the actions or conduct of the defendant. *McGee v. State*,

12

774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *see Guevara*, 152 S.W.3d at 50 (noting that intent may be inferred from circumstantial evidence, such as acts, words, or conduct of appellant).

Appellant does not challenge the conviction against her for aggravated kidnapping and concedes that a deadly weapon was used against the victim. She restricts her aggravated-robbery sufficiency challenge to the element of committing theft, arguing that the evidence was insufficient to show that she "did anything either directly or as a party to commit theft or otherwise obtain and maintain control of property belonging to the victim to complete a robbery of the victim" or that she "should have anticipated that theft would be committed against the complainant." *See* Tex. Penal Code §§ 7.01(a), 7.02(b), 31.03(a). Appellant focuses on her own testimony that she did not intend to rob the victim, arguing that she "didn't intend to put any of the complainant's items in a bed sheet that was carried from the trailer" and that she "never had the phone, clothes, or backpack of the complainant." She also focuses on her boyfriend's testimony that he was the one who removed the victim's backpack from the trailer.

Faced with conflicting evidence, however, the jury could have found appellant's testimony about the theft of the victim's possessions not credible. *See Clayton*, 235 S.W.3d at 778–79. The State presented evidence that the co-defendants jointly gathered the victim's possessions, including her phone, after placing the victim in the shed and that appellant and her boyfriend left with the victim's possessions because he "was told that [he] needed to get rid of" and "dispose of" them. A co-defendant testified that they, including appellant, "gathered everything up and put it on the bed" and that there was a "mention" about getting rid of evidence like the victim's clothes and phone. The victim also testified that she never recovered any of her possessions from

13

that night. Based on this evidence, the jury could have reasonably inferred that, as part of the co-defendants' conspiracy to commit aggravated kidnapping, the theft of the victim's possessions by a co-defendant "should have been anticipated" by appellant, *see* Tex. Penal Code § 7.02(b), and that she "aid[ed]" in appropriating the property for the theft, *see id.* § 7.02(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.").

Viewing the evidence in the light most favorable to the verdict and assuming that the jury resolved the conflicts in the evidence in favor of the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed the offense of aggravated robbery as a party. *See Jackson*, 443 U.S. at 319; *see also* Tex. Penal Code § 7.02(a)(2), (b). Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict for aggravated robbery and do not address the evidence to support her conviction as a principal actor for this offense. *See Anderson*, 416 S.W.3d at 889; *Ladd*, 3 S.W.3d at 557. We overrule appellant's second issue.

**Tampering with Evidence**

In her third issue, appellant challenges the sufficiency of the evidence to support the conviction for tampering with evidence against her as the principal actor or as a party to the offense. *See* Tex. Penal Code §§ 7.01(a), 7.02. A person commits the offense of tampering with physical evidence if the person "knowing that an offense has been committed, alters, destroys, or conceals any . . . thing with intent to impair its . . . availability as evidence in any subsequent investigation of

14

or official proceeding related to the offense." *See id*. § 37.09(d)(1). Appellant argues that "[t]here was no evidence at trial that [she] directly altered, destroyed or concealed evidence." She focuses on her boyfriend's testimony that he was the one that took the victim's possessions from the trailer and then burned them and that he did not discuss this plan with appellant.

In addition to the evidence concerning the victim's possessions, however, there was evidence that appellant participated in destroying her own clothes. The evidence included a video recording of a police investigation of appellant's boyfriend. Although he testified during trial that his statements in the interview were not true, he agreed that he told the detective during the interview that appellant "participated in the burning of the clothes" and that she did not want to take the "chance" that there was blood on her clothes. Other evidence also showed that appellant participated in gathering the victim's possessions in the trailer and then accompanied her boyfriend with the victim's possessions and appellant's clothes to the location where the victim's possessions and appellant's clothes were burned in a fire pit a short time later. Although appellant testified at trial that she did not learn until later that her boyfriend had burned the victim's possessions and her clothes, she also testified that, when she gave her clothes to her boyfriend, "[h]e told me he was going to get rid of them. I didn't know exactly how, but there was—I knew there was a fire pit in the backyard" and that she did not want to get into trouble.

Faced with the conflicting evidence, the jury could have found the testimony of appellant and her boyfriend that she did not participate in destroying evidence not credible. *See Clayton*, 235 S.W.3d at 778–79. The jury could have reasonably inferred from the evidence that appellant, acting with intent to assist the destruction of evidence because she did not want to get in

15

trouble, encouraged and aided her boyfriend in destroying the victim's possessions and her own clothes. *See* Tex. Penal Code § 7.02(a)(2); *Guevara*, 152 S.W.3d at 50 (noting that "[m]otive is significant circumstance indicating guilt").

Viewing the evidence in the light most favorable to the verdict and assuming that the jury resolved the conflicts in the evidence in favor of the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant, as a party, destroyed physical evidence knowing that an offense had been committed. *See Jackson*, 443 U.S. at 319; *see also* Tex. Penal Code §§ 7.02(a)(2), 37.09(d)(1). Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict for tampering with physical evidence and do not address the evidence to support her conviction as a principal actor for this offense. *See Anderson*, 416 S.W.3d at 889; *Ladd*, 3 S.W.3d at 557. We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   January 13, 2017

Do Not Publish