In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00035-CR**
_____

**MARSHALL WAYNE CLAYTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-05-06964-CR**

---

**MEMORANDUM OPINION**

A grand jury indicted Appellant Marshall Wayne Clayton for the third-degree felony offense of injury to an elderly individual, alleging he "intentionally or knowingly cause[d] bodily injury to [Myra Williams], a person 65 years of age or older, by striking [Myra Williams] with defendant's hand[.]"[1] *See* Tex. Penal Code

---

[1] We refer to alleged victims by aliases herein. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

Ann. § 22.04(a)(3), (c)(2). A jury found Clayton guilty of the offense charged, found the enhancement allegations true, and assessed punishment at twenty-five years' imprisonment. In three issues, Clayton challenges his conviction. Finding no error, we affirm.

## Evidence at Trial

<u>Testimony of Myra Williams</u>

Myra Williams testified that she was ninety-three years old and she lived at an assisted living facility. Myra recalled a night when she was walking outside with one of the nurses and a man approached them and started hitting the nurse with his fist. Myra did not recall the nurse hitting the man, and the nurse tried to protect Myra. According to Myra, at one point the man hit Myra with his closed fist:

> [S]he'd get in front of me. But that one lick, he glazed her but he hit me right here. And I was black and blue for a long time. And now two teeth are loose.
> . . .
> [H]e hit[] her. He didn't really -- he wasn't hitting at me. And he just kind of glanced her and hit me.
> . . .
> He just kept hitting. And we went a little further down. And I don't know how it c[a]me about, but he hit and she and I both fell on the side.
> . . .
> I got hurt on the side of my face. They x-rayed me, and they said I didn't have any broke[n] bones.

On cross-examination the defense attorney asked if it was possible Myra had struck her face on her walker when she fell and that she did not fall because the man hit her, and Myra said that was not possible. State's Exhibits 5 through 8 were admitted

2

into evidence, and Myra recognized them as photos that her daughter-in-law took of her injuries and her "blue jaw[.]"

Testimony of Tanya Clayton

Tanya testified that on the evening of May 10, 2019, she was walking outside an assisted living facility with Myra, and saw her husband, Marshall Clayton, arrive. According to Tanya, she and her husband were separated at the time, her husband "got into it[]" with her about insurance and their child, he hit her about five times and pushed her down, and then he returned to his vehicle. She yelled and was upset because he hit her. Tanya did not see her husband hit Myra, but she did see Myra fall. Tanya testified that Myra told her that Clayton did not hit her, but Myra told the police "something different." Tanya also testified that she did not try to protect Myra, and Tanya testified that Myra had continued walking and was not near her when Clayton was hitting Tanya. Tanya also testified that Myra fell while trying to turn around after Clayton left. According to Tanya, Myra sometimes had problems with memory and confusion. Tanya agreed that she called 911, and she recognized her voice in the recorded 911 call that was admitted as State's Exhibit 1. According to Tanya, when she told the 911 operator "I just hate [Myra] had to go through that[,]" she was referring to Myra falling and seeing Clayton hitting her.

Tanya testified that when she and Clayton got into a fight, Myra kept walking, lost her balance, and fell into the grass. According to Tanya, Myra walked away

3

before Clayton threw the first punch, Myra "just fell[,]" and Myra did not tell her that Clayton had hit her until after she and Myra went inside. Tanya testified that she was sure Clayton did not hit Myra.

Testimony of Jillian Mahan

Jillian Mahan testified that on May 10, 2019, she, her husband, and their children were driving by the assisted living facility, she saw a woman wearing scrubs walking with an elderly woman who was using a walker, and she thought the woman wearing scrubs probably was an employee at the assisted living facility. Jillian also witnessed a man assaulting or punching the woman wearing scrubs. According to Jillian, the man punched the woman in scrubs two or three times, and she also saw the elderly woman struggle to walk as though she was losing her balance. Jillian testified that she saw the man get into his truck, her family followed the truck, and she got the truck's license plate number and she called 911. At one point, Jillian saw a woman on the ground. On cross-examination, Jillian testified that she did not see the man strike the elderly woman. An audio recording of the 911 call was entered into evidence as State's Exhibit 1 and published to the jury.

Testimony of Ryan Mahan

Jillian's husband Ryan testified that on May 10, 2019, as he was driving with his family, his wife "proclaimed that a man was hitting someone[,]" and when he looked, he saw a man standing over two women, the women were "down lower"

4

than the man, the women seemed distraught, and someone was hanging onto a walker. Ryan testified that one of the women was quite elderly and the other woman was wearing scrubs. Ryan identified the defendant as the man he saw that night standing over the two women. Ryan also testified that he did not see the man strike Myra, and he admitted he only saw "pieces" of what happened. According to Ryan, his wife called 911, he made a statement to the police, and he told the police that he saw the elderly woman hanging onto a walker and the woman in scrubs on the ground.

Testimony of Officer Patrick Guidry

Officer Patrick Guidry, with the Magnolia Police Department, testified that on the evening of May 10, 2019, he was dispatched to a "live-in facility for the elderly[]" where he spoke with a nurse and an elderly woman. Guidry thought the elderly woman seemed "shaken up[,]" and she told him that while they were walking on the driveway, a man pulled up, got out of his truck, and began to assault the nurse, and the elderly woman fell down after he hit her with a closed fist. Guidry observed that the elderly woman had some dried blood on the side of her face and a cut to her finger, and he photographed the injuries of both women. Guidry recognized State's Exhibits 10 through 19 as photographs of what he saw that night, including dried blood and a cut finger on the elderly woman and a scrape, bruise, and small cut to the nurse. According to Guidry, when he spoke with the nurse, she seemed pretty

5

upset and had possibly been crying. Guidry agreed that his vehicle had an operating in-car dash cam video that night and the microphone he wears captures the audio interaction he has with people. The dash cam video recording was admitted into evidence as State's Exhibit 9 and published to the jury.

Testimony of Officer Cody Hodges

Officer Cody Hodges, with the Magnolia Police Department, testified that on May 10, 2019, he was dispatched to a disturbance at an assisted living facility where he met with Tanya Clayton and Myra Williams. According to Hodges, Tanya was crying a little bit and she appeared "upset, frightened, very emotional[,]" and Myra had a red mark on her face. Hodges testified that Tanya told him that, while she was walking with Myra, Clayton came onto the property, was very upset with her, and "began to punch her in the [] head[]" with a closed fist. He also recalled that Tanya told him that she did not initially know that Myra was struck but she knew Myra had fallen, and after the women went inside, Myra said she had been hit in the face. Hodges observed scratches and red marks on Tanya's face, and Myra had a red mark on her face and an injury on one finger. According to Hodges, both women reported they were hurt and in pain. Hodges recalled that he was wearing a working body camera that day, he agreed that State's Exhibit 20 was a recording from his body camera, and the video was admitted and published to the jury.

6

Testimony of Detective Brian Clack

Brian Clack, a detective with the Magnolia Police Department, testified that he met with Clayton in the investigation of the assault of Myra Williams. Clack agreed that if Myra had fallen and hit her face during a struggle Clayton was having with his wife there would be sufficient cause to arrest Clayton for injury to an elderly person.

Testimony of Jarret Kenning

Jarret Kenning, the in-charge paramedic for Montgomery County Hospital District EMS, testified that he was dispatched to a call at an assisted living facility on May 10, 2019, where he and his partner contacted two people in the lobby. Kenning's Patient Care Report for Myra was admitted into evidence as State's Exhibit 21. The report lists chief complaint, as stated by Myra, "He hit me and I fell down[,]" and it states in part that "The patient's caregiver stated they were walking outside the facility when the caregiver's husband arrived on scene and began striking the caregiver. The caregiver stated the patient was struck in the face once and fell to the ground." The report also stated that Myra had bruising and bleeding on her right cheek and around her mouth and she reported "a six-out-of-10 pain[.]"

Testimony of Yolanda Palmer

Yolanda Palmer, a registered nurse at the HCA Houston Tomball hospital, testified that she saw both Tanya and Myra on the night of May 10, 2019. State's

Exhibits 23 and 24 were admitted, which Palmer identified as records of Palmer's observations of what she heard and observed during her examination of Myra and Tanya. Palmer agreed that the records showed that Myra's chief complaint was that she was assaulted, and she had a laceration on a finger, a contusion of the head, and pain in her right arm and both knees. According to Palmer, Tanya received a diagnosis of head injury, headache, and pain in her right arm resulting from an assault.

Testimony of Marshall Clayton

Clayton testified that, on the day of the incident, he entered the gate at the assisted living facility and walked up to Tanya and Myra. He agreed that he got "very close[]" to Tanya and that, while he was talking with her, Myra was out of his sight and nowhere near him. Clayton agreed that he got angry and hit Tanya three or four times, he grabbed her, and he pushed her. According to Clayton, he then "immediately walked out." Clayton did not know where Myra was when he hit Tanya. Clayton agreed that it was wrong for him to hit Tanya, and according to Clayton, Tanya was the only person he hit that day. Clayton testified that he did not touch or injure Myra, and that only Tanya went to the hospital as a result of his actions. Clayton agreed he returned to the assisted living facility on another day to take flowers, a stuffed animal, and an "apology letter" after he learned that Myra had fallen. According to Clayton, he apologized because of what he did to Tanya and

8

because Myra "shouldn't have had to see that[]" and not because of causing an injury to Myra. State's Exhibit 33 was admitted into evidence, which Clayton identified as a letter he wrote for Myra and her family. Clayton agreed that in the letter he stated he was sorry and "I pray that first that it was not my fault, but if it was, then I pray that first she's okay, then I pray that she and the family forgive me for something I didn't intend to happen[.]" Clayton also denied that he intended to strike Tanya and testified that he hit her in "the heat of the moment[]" when he lost his temper.

Improper Argument

In his first issue, Appellant argues that the prosecutor improperly commented on Appellant's federal and state right to a jury trial. In the State's closing argument, the prosecutor stated:

> . . . There is nothing reckless about what he did that night. I want that to be very clear in everybody's mind that he did this intentionally and knowingly, trying to injure [Tanya]. He missed and hit [Myra] and put her in the hospital that night. He made her come here, and she had to testify to you about what happened to her. . . .

According to Appellant, the statement "He made her come here, and she had to testify to you about what happened to her[]" was an improper argument because it was not a summation of the evidence, it was not a reasonable deduction from the evidence, and it was not a response to an argument by opposing counsel. *See Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999) (explaining the limits of proper jury argument). Appellant argues that the prosecutor's comment suggested that

9

Appellant should be penalized for making Myra come to court to testify and shamed Appellant for failing to waive his constitutional and statutory right to trial by a jury.

The State argues that Appellant waived error on this point because he failed to object to the alleged improper argument during the trial. To preserve error for appeal, a party must make a timely objection and obtain an adverse ruling on the objection. *See* Tex. R. App. P. 33.1(a); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992). "The right to a trial untainted by improper jury argument is forfeitable." *See Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)). "[A] defendant's failure to object to a jury argument or a defendant's failure to pursue an adverse ruling [on] his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell*, 933 S.W.2d at 89. Even an improper jury argument that may not be cured by an instruction to disregard is forfeited by the failure to timely object. *See Hernandez*, 538 S.W.3d at 622-23 (citing *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010)). After reviewing the record in this case, we conclude that Appellant failed to object to the prosecutor's argument. We overrule Appellant's first issue. *See* Tex. R. App. P. 33.1(a); *Cockrell*, 933 S.W.2d at 89.

## Motion for Mistrial

In Appellant's second issue, he argues that the trial court abused its discretion in denying Appellant's motion for mistrial. During trial, the State sought to examine Tanya about Clayton's alleged prior assaults of her. The trial court overruled the State's request. Later during the trial, the State entered into evidence a redacted video recording from Officer Hodges's bodycam after overruling Appellant's hearsay objection to the entire video. The video was published to the jury, and during a portion of the video, Tanya tells Officer Hodges that there was a history of abuse even though she had not reported it and she says she had never previously suffered bruises "except the last time." After the video was played, the following exchange occurred:

> [Defense Attorney]: Your Honor, I'm going to request that the jury disregard the part where Ms. Clayton says she's never bruised before and that be struck from the record and given instructions to the jury to disregard that.
>
> [Prosecuting Attorney]: No objection, Your Honor. I apologize. I did not realize it was not in there. I sincerely apologize to the Court.
>
> THE COURT: Okay. Let's get a properly redacted portion to the court reporter first thing in the morning. Okay?
>
> [Prosecuting Attorney]: Yes, Your Honor.
>
> THE COURT: Skip past that.
>
> [Prosecuting Attorney]: Yes, Your Honor.
>
> (Bench conference ended.)

11

THE COURT: All right. Ladies and gentlemen, you're to disregard the last 15 seconds of the video that you just watched.
You may continue.

The following day, the Defendant moved for a mistrial arguing that extraneous offense evidence had been presented to the jury that had been addressed by a motion in limine. The trial court denied the motion.

On appeal, the Appellant argues that the instruction to disregard was not sufficient to cure the error and playing the unredacted portion of the video was "clearly calculated to inflame the minds of the jury." Appellant also argues that evidence that Appellant had struck Tanya on other occasions was "evidence of such a damning character trait that it is impossible to remove the harmful impression from the jury's mind." The State argues that Appellant waived error because his motion for mistrial was untimely because it was not made at the earliest possible opportunity.

We review the trial court's denial of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling, and considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the ruling if it was within the zone of reasonable disagreement. *Id.* A mistrial is the appropriate remedy only when the objected-to events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced

12

against the defendant. *See Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004). A mistrial is required only in extreme circumstances where the prejudice is incurable because it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *see also Ocon*, 284 S.W.3d at 884. Because a mistrial is an extreme remedy, "a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

To preserve an issue for appellate review, the defendant must make a timely request, objection, or motion stating specific grounds for the ruling he desires the trial judge to make and obtain a ruling on the objection. Tex. R. App. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). The objection must be made at the earliest possible opportunity, and "[a] motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007); *see also King v. State*, 953 S.W.2d 266, 268 (Tex. Crim. App. 1997); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Also, to preserve error for review, a defendant's complaint on appeal must comport with the objection raised at trial. *See Santellan v. State*, 939 S.W.2d 155, 171 (Tex. Crim.

13

App. 1997; *Borne v. State*, 593 S.W.3d 404, 412 (Tex. App.—Beaumont 2020, no pet.).

In this case, Appellant did not move for a mistrial until the day after the State published the complained-of last fifteen seconds of video evidence and after Officer Hodges completed his testimony and after Jarret Kenning had testified. We conclude that Appellant failed to make his motion for mistrial in a timely manner. *See Griggs*, 213 S.W.3d at 927. Moreover, Appellant's argument on appeal does not comport with his objection at trial. *See Santellan*, 939 S.W.2d at 171. Furthermore, the trial court instructed the jury to disregard the complained-of section of the video exhibit, and we presume the jury followed the court's instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented."); *Ladd*, 3 S.W.3d at 567 (concluding trial court did not abuse its discretion because it could have reasonably concluded that its instruction to disregard was sufficient to cure any harm). Therefore, we conclude that the trial court's denial of the motion for mistrial was within the zone of reasonable disagreement. *See Ocon*, 284 S.W.3d at 884; *Griggs*, 213 S.W.3d at 927. We overrule Appellant's second issue.

## Sufficiency of the Evidence

Appellant's third argument argues that the evidence is insufficient to sustain his conviction. According to Appellant, Myra was the only witness who testified that

Appellant struck her and none of the other witnesses observed Appellant strike Myra.

Evidence is sufficient to support a conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). When reviewing the sufficiency of the evidence, we consider all the admitted evidence in the light most favorable to the verdict. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the credibility of a witness's testimony and the weight to assign to that testimony. *Jackson*, 443 U.S. at 319; *Metcalf*, 597 S.W.3d at 855. The jury can believe all, some, or none of a witness's testimony. *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974). Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 16-17. If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The State was required to prove that Appellant intentionally, knowingly, recklessly, or with criminal negligence caused bodily injury to a person sixty-five years of age or older. *See* Tex. Penal Code Ann. 22.04(a)(3), (c)(2). A person is

criminally responsible for causing a result if the only difference between what occurred and what he desired, contemplated, or risked is that a different offense was committed or a different person or property was injured, harmed, or otherwise affected. Tex. Penal Code Ann. § 6.04(b); *see also Ex parte Norris*, 390 S.W.3d 338, 339-40 (Tex. Crim. App. 2012) (discussing transferred intent). A person's culpable mental state is generally shown by circumstantial evidence and may be inferred from a person's words and acts. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998); *Beaty v. State*, 156 S.W.3d 905, 908 (Tex. App.—Beaumont 2005, no pet.).

In this case, Tanya testified that Clayton struck her about five times. Myra testified "he glazed her but he hit me[.]" Jillian Mahan testified that she saw Clayton hitting a woman who was wearing scrubs, and another witness testified that he saw Clayton standing over two women who were on the ground. Officer Guidry testified that Myra told him that while they were walking on the driveway, a man pulled up, began to assault the nurse, and Myra fell down after the man hit Myra with a closed fist. Officer Hodges testified that Tanya told him that Clayton "began to punch her in the [] head[]" with a closed fist while she was walking with Myra. Jarret Kenning testified that Myra told him, "He hit me and I fell down[,]" and the Patient Care Report for Myra stated "The patient's caregiver stated they were walking outside the facility when the caregiver's husband arrived on scene and began striking the caregiver. The caregiver stated the patient was struck in the face once and fell to the

16

ground." Photos of Myra's injuries were admitted into evidence. The jury could have believed that Clayton acted intentionally and struck Myra as a result, and the jury could have disbelieved Tanya's and Clayton's testimony that he did not hit Myra. *See* Tex. Penal Code Ann. § 6.04; *Brooks*, 323 S.W.3d at 899 n.13; *Clayton*, 235 S.W.3d at 778; *Esquivel*, 506 S.W.2d at 615. Viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could find each essential element of the offense beyond a reasonable doubt, and the evidence is sufficient to support Appellant's conviction for injury to an elderly individual. *See Metcalf*, 597 S.W.3d at 855; *Hooper*, 214 S.W.3d at 13. We overrule Appellant's third issue.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 26, 2020
Opinion Delivered December 16, 2020
Do Not Publish

Before Kreger, Horton and Johnson, JJ.